### Richmond

## SAMUEL COLUMBUS STOKES

v.

## COMMONWEALTH OF VIRGINIA

No. 1556-85

Decided May 5, 1987

COUNSEL

Cary B. Bowen, for appellant.

W. Mark Dunn, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.** — The question presented on this appeal by Samuel Columbus Stokes is whether evidence of a crime seen and seized by a police investigator, who was an invitee in Stokes' residence, was obtained by a search conducted in violation of the fourth amendment and, thus, tainted a search warrant which later was issued on the basis of the seized evidence. We conclude that the seized evidence was in plain view and was not discovered during a search.

Investigators Jan W. Stem and Thomas Tiller of the Henrico County Police Department were assigned to investigate Samuel Columbus Stokes' complaint that he was robbed at his residence. Ten days after the robbery the investigators made an appointment to meet Stokes at his residence in order to show him a photographic array of suspects. Stokes invited them into his den where he was repairing or building a glass rack at a bar. Stokes viewed the photographs at the bar and conversed with the investigators as he continued to work on the glass rack. During or subsequent to Stokes' examination of the photographs, the conversation turned to the construction of the bar. Stem, who had built a bar a few years ago, testified that he "walked to the edge of the bar and looked behind it to see the construction." While Stem was behind the bar he observed a yellow sheet of paper on the top of a stand

with at least six visible lines of handwriting. Stem testified that he immediately recognized the writing and columns of numbers as being related to gambling activity.

Stem then told Tiller to come behind the bar to view the construction of the bar. When Tiller joined him behind the bar, Stem motioned toward the paper and made eye contact with Tiller which Tiller understood to be an indication that Tiller should take Stokes out of the room. As Tiller took Stokes to the living room to view the area where Stokes had been tied up by the robbers, Stem seized the paper. Stokes apparently did not know at that time that Stem seized the paper.

Based upon the seized paper, a search warrant for the residence was issued. Assorted gambling paraphernalia, including ledger sheets, adding machine tapes, and cash, were discovered as a result of the search. Stokes' motion to suppress the evidence on the ground that Stem initially conducted a warrantless search in violation of the fourth amendment was denied.[1] Stokes was then tried and convicted of operating an illegal gambling operation.

"The 'plain view' exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be." *Washington v. Chrisman*, 455 U.S. 1, 5-6 (1982)(citations omitted). The three prong test of the "plain view" doctrine, which may be gleaned from the plurality portion of the Supreme Court's opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 464-70 (1971), requires that (a) the officer must be lawfully in a position to view and seize the item, (b) the item must be discovered inadvertently, and (c) it must be immediately apparent to the officer that the item is evidence of a crime, contraband, or otherwise subject to seizure. *See Blair v. Commonwealth*, 225 Va. 483, 489, 303 S.E.2d 881, 886 (1983) ("[u]nder this doctrine, a police officer [who is lawfully in a place where he has a right to be] . . . may seize evidence of criminal activity in plain view that he comes upon inadvertently when it is immediately apparent that the items

---

[1] Stokes did not argue in the circuit court and does not challenge here the legality of Stem's conduct on the ground that Stem surreptitiously seized the material; thus, we express no opinion on the issue of the constitutional propriety of a surreptitious seizure of effects under the circumstances of this case.

are incriminating").

In a recent decision the Supreme Court determined that a valid search or seizure under the "plain view" doctrine must be premised upon a finding of probable cause. *Arizona v. Hicks*, 107 S. Ct. 1149 (1987). Prior to *Hicks* the issue was unresolved. *See Texas v. Brown*, 460 U.S. 730, 736-37 (1983) (the "immediately apparent" language in *Coolidge* was "very likely an unhappy choice of words" and was intended to be merely a "statement of the rule . . . requiring probable cause for seizure . . . .").

It is beyond dispute that Stem and Tiller were lawfully in Stokes' residence. Tiller spoke with Stokes by telephone earlier that day to arrange the opportunity for Stokes to view the photographic array. Stokes expected them to come to his home; he received them in his den; and he conversed informally with both investigators as he viewed the photographs and continued to work on the bar fixture.

We disagree with the argument advanced by Stokes that the investigators were illegally behind the bar. Both investigators were at the bar because Stokes chose to view the photographs as he continued his tasks at the bar. The evidence, viewed in the light most favorable to the Commonwealth, suggests that the discussion among Stokes, Stem, and Tiller concerning the bar and the bar appliance that was being worked on by Stokes led Stem to step behind the bar to view its construction. The area behind the bar where Stem stood and from which he was able to observe the paper was not so remote from the bar as to be beyond the reasonable scope of Stokes' invitation or decision to view the photographs at the bar. Moreover, the paper containing the gambling notations was on a table immediately behind the bar and within clear sight and reading distance of Stem as he moved in the area reasonably related to his presence in the residence. Stem was not required to close his eyes to evidence of criminality in a place where he had a legitimate reason to be. *See United States v. Willis*, 759 F.2d 1486, 1498 (11th Cir.), *cert. denied,* 474 U.S. 849 (1985); *United States v. Leal*, 460 F.2d 385, 389 (9th Cir.), *cert. denied,* 409 U.S. 889 (1972).

█ Contrary to Stokes' argument, there is no evidence that either investigator conducted a search of the residence. We believe that the absence of a search and the discovery in plain view of the

seized item distinguishes this case from *Gouled v. United States*, 255 U.S. 298 (1921), where there was a search for and seizure of items not in plain view. "Merely 'looking at that which is open to view is not a search.'" *Cook v. Commonwealth*, 216 Va. 71, 73, 216 S.E.2d 48, 50 (1975) (quoting *Duffield v. Peyton*, 209 Va. 178, 183, 162 S.E.2d 915, 918 (1968)).

In order for the discovery to be inadvertent, the police may not "know in advance the location of the evidence and intend to seize it." *Coolidge*, 403 U.S. at 470. Although both investigators knew or suspected that Stokes was involved in gambling, there is no indication that either investigator believed that gambling paraphernalia would be found behind the bar in Stokes' residence.[2] Moreover, in view of the telephone call from Tiller to Stokes alerting him to the visit, it is a tenable proposition that neither officer expected to see gambling paraphernalia in plain view. We also note, however, that a generalized expectation that seizable evidence may be found is not sufficient to preclude application of the plain view doctrine. *Texas v. Brown*, 460 U.S. at 743-44. The evidence, thus, demonstrates that the investigators discovered the paper inadvertently, satisfying the second prong of the *Coolidge* test.

Finally, the evidence establishes that the significance of the writing was immediately apparent to Stem. Stem testified that he was familiar with gambling sheets of that type because of his law enforcement experience and that he had "[n]o doubt in [his] mind" that the writing was related to unlawful gambling activity. After he saw the paper and without touching it, Stem asked Tiller to view the rear of the bar. Stem's conduct at the time of his observation, which is proved by both investigators' testimony that Stem by gestures directed Tiller's attention to the paper and caused Tiller to lead Stokes away from the bar, corroborates his testimony that he immediately knew the significance of the writing. These facts also establish that Stem had probable cause to believe that the writing was associated with criminal activity.[3] *See*

---

[2] Stokes makes no contention that the consensual entry by the officers to investigate the robbery was a pretext maneuver to enable them to search for evidence of gambling activity; thus, we need not decide whether, under the circumstances of this case, an "ulterior motive" for the entry would invalidate the seizure. *See Scott v. United States*, 436 U.S. 128 (1978).

[3] The application of the probable cause requirement of *Hicks* to this case does not implicate concerns of retroactivity. The probable cause standard places a greater burden on

*Arizona v. Hicks*, 107 S. Ct. at 1153-54; *Texas v. Brown*, 460 U.S. at 742.

We conclude that Stem did not conduct a warrantless search and that the paper was seized while it was in plain view and while Stem was lawfully in Stokes' residence. Accordingly, the manner in which the paper was discovered did not pose an impediment to its introduction into evidence, and the judgment is affirmed.

*Affirmed.*

Barrow, J., and Cole, J., concurred.

---

the Commonwealth, thereby eliminating any potential prejudice to Stokes. Additionally, the evidence presented at trial amply establishes the existence of probable cause.