DANIEL CLAYTON CONWAY

v.

COMMONWEALTH OF VIRGINIA

No. 0482-88-2

Decided September 25, 1990

COUNSEL

John H. McLees, Jr. (Office of the Public Defender, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KEENAN, J.**—Daniel Conway was convicted in a jury trial of second degree murder. He argues: (1) that the trial court erred in admitting into evidence a recorded statement he made which was not provided to him prior to its admission at trial; (2) that the seizure of a shirt and pants from his bedroom violated his fourth amendment rights; and (3) that the trial court erred in failing to inquire into the mental state of a juror after being notified of a problem by the jury foreman. We hold that the Commonwealth's failure to disclose the recording of Conway's statement was error and therefore reverse his conviction. We hold that Conway's shirt and pants were in plain view when Detective Harding obtained them, and, thus, that their seizure did not violate Conway's fourth amendment rights. Since we reverse Conway's conviction, we do not reach the issue of the juror's mental state.

On November 9, 1987, Keith Madison found his girlfriend, Tina Harper, dead in her room at the Chamberlayne Motel. Harper had red marks around her neck and the police considered her death to be suspicious. Madison told Detective Harding that at the time he discovered Tina's body he saw a man leaving the motel in a red car. The man was wearing a red shirt with a confederate flag on it and a pair of blue pants. Detective Harding determined that the person in the car was the last person to have been with the victim before she died. The car was registered to the defendant, Daniel Conway.

Approximately five hours later, Detective Harding and two other officers went to Conway's home and spoke first to his father. Upon learning that Conway was in the home, they entered the living room when Conway's father opened the door. Conway's mother called Conway into the living room. In front of Conway's parents, Detective Harding asked Conway whether he had been at the Chamberlayne Motel that day. Conway responded that he had not. Without Conway's knowledge, Detective Harding recorded the entire conversation.

Harding later testified that he did not believe that Conway was telling the truth when he denied having been at the motel. Detective Harding also testified that he believed he had probable cause to arrest Conway, although he did not do so at that time. Instead, Harding asked Conway to accompany him to the police station for

an interview relating to the death of Tina Harper.

Conway left the living room and walked down a hall toward the back of the home. Detective Harding followed him. After using the bathroom, Conway asked Harding if he could change his clothes. Harding told him that he could get a coat. Conway walked to his bedroom, again followed by Harding. When Conway opened the door to the bedroom, Harding saw a red shirt lying beside the door. Harding picked up the shirt and saw that it had a confederate flag on the back. Harding also observed a pair of blue pants lying on the floor under the shirt. Harding seized the shirt and pants.

Conway was advised of his *Miranda* rights in the police car on the way to the station. Conway later admitted to Detective Harding that he had been at the motel earlier that day. He was placed under arrest at that time.

At Conway's trial, the Commonwealth introduced the red shirt and the pants into evidence. In addition, on rebuttal, the Commonwealth introduced the tape recording of Conway's conversation with Harding in the home. Although there was a written discovery order entered in this case, the recording was not provided to Conway prior to its use at trial.

The Commonwealth argues that Conway was aware of the substance of the statement and that the recording of Conway's statement was provided to him as soon as the Commonwealth learned of its existence. Thus, the Commonwealth argues that it should not be penalized for its failure to make the tape available earlier. We disagree.

In the case before us, the trial court entered a written discovery order specifically requiring the Commonwealth to provide without restriction all written or recorded statements made by Conway.[1]

---

[1] The discovery order read as follows:

A. That the Commonwealth will disclose and permit the defendant to inspect and copy:

1. All relevant written or recorded statements or confessions made by the accused or copies thereof;

2. The substance of any oral statements or confessions made by the accused to any law enforcment [sic] officer, existence of which is known to the Attorney for the Commonwealth;

3. All written laboratory and scientific reports. . . .

The police possessed the tape recording of Conway's statement and the prosecutor could have discovered its existence through the exercise of due diligence. The Commonwealth did not seek a protective order, as authorized by Rule 3A:11(f). Thus, the Commonwealth's introduction of the tape into evidence without first making it available to Conway violated the discovery order entered in this case.

Furthermore, Rule 3A:11(b)(1) provides in pertinent part:

Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph any relevant (i) written or recorded statements or confessions made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the attorney for the Commonwealth.

Unlike the discovery order entered in this case, Rule 3A:11 treats written and oral statements equally. We nevertheless find that the Commonwealth's failure to disclose the tape recording also violated Rule 3A:11.

Rule 3A:11 requires the Commonwealth to allow an accused to inspect and copy or photograph any written or recorded statements, the existence of which is known to the attorney for the Commonwealth. In *Fitzgerald v. Bass*, 4 Va. App. 371, 358 S.E.2d 576 (1987), we held that constructive knowledge is attributed to the prosecutor where information is in the possession of the police, so long as the officer is not a law enforcement official of a different jurisdiction. *Id.* at 382-83, 358 S.E.2d at 576. Here, one of the investigating officers of the Richmond Bureau of Police had possession of the tape. Therefore, constructive knowledge of the existence of the tape is attributable to the attorney for the Commonwealth and disclosure was required under Rule 3A:11.

Admission of relevant and material evidence at trial which was not previously disclosed as required by a discovery order,

C. That all of the foregoing discovery be accomplished no later than March 4, 1988, and that the parties be subject to a continuing duty to disclose any items falling within the scope of this order which were not, and could not with due diligence have been known to counsel on March 4, 1988.

however, is not reversible error absent a showing of prejudice. *Davis v. Commonwealth*, 230 Va. 201, 204, 335 S.E.2d 375, 377-78 (1985); *Stotler v. Commonwealth*, 2 Va. App. 481, 484, 346 S.E.2d 39, 40 (1986). In this case, we find that the Commonwealth's failure to produce the tape did prejudice Conway's case. Conway had no opportunity to review the recording and refresh his own recollection of the conversation with Detective Harding prior to testifying at trial. He was impeached by the recording after his testimony was before the jury. While the credibility of both Conway and Detective Harding were before the jury, only Harding had the opportunity to listen to a recording of the conversation prior to testifying about its content.

Prior to trial, the Commonwealth informed Conway of the substance of his statement and Detective Harding's proposed testimony regarding that conversation. However, Conway was not told until after he testified that a recording existed which directly supported Harding's recollection of the conversation and contradicted his own. Therefore, we find that the Commonwealth's failure to disclose the existence of the tape prior to Conway's testimony prejudiced Conway's defense and constitutes reversible error.

The dissent argues that the trial court did not err by allowing the Commonwealth to use the tape at trial since it was used only in rebuttal and for impeachment purposes. While we recognize that the United States Supreme Court has sanctioned the impeachment use of evidence obtained in violation of an accused's fourth and fifth amendment rights, *see, e.g., Harris v. New York*, 401 U.S. 222 (1971); *United States v. Havens*, 446 U.S. 620 (1980); *Oregon v. Hass*, 420 U.S. 714 (1975); and other courts have sanctioned the impeachment use of evidence obtained in violation of a defendant's sixth amendment rights, *see, e.g., Martinez v. United States*, 566 A.2d 1049 (D.C. App. 1989), we nevertheless find that the impeachment use of the tape constitutes reversible error.

This case is distinguished from the cases relied on by the dissent. In those cases, the court determined that the need to protect the truth-finding process outweighed any possible deterrent on police misconduct. In each of those cases, illegally obtained evidence was admitted for impeachment purposes, but was evidence the existence of which was known to the defendant. Here, however, the defendant learned of the tape recording only after he had testified

before the jury. In addition, the tape recording expressly contradicted Conway's testimony as to what was said at the trailer prior to his arrest. Thus, none of the remedies afforded by Code § 19.2-265.4, except exclusion of the evidence or a mistrial, would have afforded him a fair opportunity to respond to this evidence. Accordingly, we find that the trial court's action was an abuse of discretion requiring the reversal of Conway's conviction.

Conway further argues that the seizure of the red shirt and blue pants from his bedroom violated his fourth amendment rights. Conway maintains that the seizure of the clothing did not fall within the "plain view" exception to the warrant requirement since Detective Harding had no right to be in his bedroom[2] and the items' evidentiary significance were not immediately apparent to the officers.

The Commonwealth argues that the seizure of the items was permissible because the officer had probable cause to arrest Conway in the living room and thus the search was equivalent to a search incident to arrest. In the alternative, the Commonwealth argues that the seizure was permissible under the plain view exception to the warrant requirement. We find that the items were in plain view and were, therefore, lawfully seized.[3]

The plain view exception to the warrant requirement was first set forth by the Supreme Court in a plurality opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 464-70 (1971). In *Stokes v. Commonwealth*, 4 Va. App. 207, 355 S.E.2d 611 (1987), this Court applied the three prong test set forth by the *Coolidge* plurality. Since our decision in *Stokes*, a majority of the Supreme Court has accepted the plurality holding in *Coolidge* as binding precedent with one exception: the inadvertance requirement is no longer a necessary condition for a seizure to be lawful under the plain view doctrine. *Horton v. California*, 496 U.S. 128, 130 (1990). Accordingly, we hold that in order for a seizure to be permissible under the plain view doctrine, two requirements must be met: "(a) the officer must be lawfully in a position to view and

---

[2] Conway did not raise the issue as to whether the officers' initial entry into the trailer was permissible and therefore we do not address that issue here.

[3] We need not address, therefore, the Commonwealth's argument that the officers had probable cause to arrest Conway in his living room. In addition, we do not decide whether the pre-arrest seizure would have been lawful in the event that probable cause to arrest Conway existed.

seize the item, [and] (b) it must be immediately apparent to the officer that the item is evidence of a crime, contraband, or otherwise subject to seizure." *See Stokes*, 4 Va. App. at 209, 355 S.E.2d at 612.

■ We find that Detective Harding was lawfully in Harding's bedroom, satisfying the first prong of the plain view test. As articulated by this Court in *Servis v. Commonwealth*, 6 Va. App. 507, 371 S.E.2d 156 (1988):

[P]olice officers may, whenever they possess an articulable and objectively reasonable belief that a suspect is presently or potentially dangerous, conduct a protective search of the area within the suspect's immediate control. If the suspect moves about, an officer is justified in staying with the individual during the course of the stop and conducting a protective search of the areas which come within the suspect's immediate control, even if this action necessitates entry into the suspect's home.

*Id.* at 519, 371 S.E.2d at 162 (citations omitted). In the case before us, Detective Harding was investigating a suspicious death in which drugs or manual strangulation were the suspected causes of death. Although Conway's vehicle was seen leaving the scene at the same time the victim's body was discovered, Conway denied having been at the motel. In addition, when asked by the detective to accompany him to the police station, Conway headed toward the rear of the house. Based on these facts, we find that Harding had an objectively reasonable belief that Conway was potentially dangerous; thus, we find that Harding lawfully followed Conway to the back of the house and into the bedroom.

■ Conway also argues that the seizure was improper because it was not immediately apparent to Detective Harding that the items were actually evidence of a crime. Conway contends that since the red shirt was a common item, its significance did not become apparent until the officer had picked it up, revealing the confederate flag. We find, however, that the fact that the flag was not immediately apparent does not dispose of the issue. In *Arizona v. Hicks*, 480 U.S. 321 (1987), the Supreme Court held that the standard for invoking the plain view doctrine is probable cause. Thus, to lawfully seize an item under the plain view exception to the warrant requirement, the officer must have probable

cause to believe that the item in question is evidence of a crime or contraband. *Id.* at 323, 326-27.

In the case before us, we find that this standard was met. Although Detective Harding may not have had probable cause to arrest Conway in the living room, the circumstances which made Harding's presence in Conway's bedroom lawful, coupled with Harding's knowledge that the man leaving the scene in Conway's car was wearing a red shirt and blue pants and Harding's discovery of a red shirt on Conway's floor, suggesting recent use of the garment, were sufficient to give Harding probable cause to believe that the shirt was evidence of a crime. Once Harding saw the confederate flag on the shirt, he had probable cause to seize the pants, which also were in plain view. Therefore, we find that the shirt and pants were lawfully seized and the trial court did not err in admitting them into evidence.

For the reasons stated, we reverse Conway's conviction and remand this cause to the trial court for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Barrow, J., concurred.

Coleman, J., concurring in part and dissenting in part.

I concur with the majority holding that the Commonwealth's attorney was required by the discovery order and by Rule 3A:11 to disclose to the defendant the tape recording of his conversation with Detective Harding. The failure of the Commonwealth's attorney to do so was a violation of the discovery order and of Rule 3A:11 irrespective of the Commonwealth attorney's actual knowledge of the tape's existence. However, the trial court did not, in my opinion, commit reversible error when, after discovering the violation, it refused to preclude the playing of the taped conversation in rebuttal and refused to declare a mistrial.

Code § 19.2-265.4(B) provides in pertinent part as follows:

If at any time during the course of the proceedings it is brought to the attention of the court that the attorney for the Commonwealth has failed to comply with [the discovery requirements], the court may order the Commonwealth to per-

mit the discovery or inspection, grant a continuance, or prohibit the Commonwealth from introducing evidence not disclosed, or the court may enter such other order as it deems just under the circumstances.

Under the circumstances in this case, for the trial court to have prohibited introduction of the taped conversation in rebuttal would have permitted testimony that was untrue, or perhaps perjured, to go unchallenged. In my opinion, under the circumstances of this case, the court did not abuse its discretion in refusing to impose such a sanction for an apparent unintentional discovery violation.

I am unwilling to hold that the discovery violation constituted reversible error where the substance of the taped conversation already had been disclosed. This was not a case where the discovery violation constituted the withholding of exculpatory evidence. The defendant was fully aware of the substance of the evidence not disclosed and of the Commonwealth's contention that initially the defendant had falsely denied being present at the murder scene. The defendant was not surprised by the Commonwealth's position that he had denied to Detective Harding being present at the motel where the murder occurred. Although the defendant was, of course, surprised to discover that the Commonwealth had a tape recording that verified Detective Harding's account of the conversation, the prejudice which resulted came not from the Commonwealth's action but from the defendant's attempt to refute the Commonwealth's evidence with untrue testimony. Even though the defendant undoubtedly would have followed a different tactical course had timely discovery been made, in the absence of evidence of an intentional violation, I would not hold that the late and incomplete discovery constitutes a basis to reverse this conviction. *See Stotler v. Commonwealth*, 2 Va. App. 481, 484, 346 S.E.2d 39, 40-41 (1986).

The majority bases its holding that the discovery violation prejudiced the defendant upon the conclusion that had the information been disclosed, the defendant and his witnesses would not have testified falsely. "When a discovery violation does not prejudice the substantial rights of a defendant, a trial court does not err in admitting undisclosed evidence." *Davis v. Commonwealth*, 230 Va. 201, 204, 335 S.E.2d 375, 377-78 (1985). While

a timely disclosure may have had a bearing upon the course which the defense would have taken, disclosure of the existence of the tape would not have changed or influenced the facts presented to the jury and there is no reasonable probability that it would have produced a different result in the case. *Robinson v. Commonwealth*, 231 Va. 142, 150-51, 341 S.E.2d 159, 165 (1986). The only bearing which early disclosure would have had is that the tape recorded evidence would have been received in evidence without the defendant first having denied the existence of the facts disclosed therein. Prejudice from late or incomplete discovery occurs when the defendant is prevented from making a complete investigation or adequate defense to his case. A defendant cannot claim prejudice when the basis for the claim is that evidence was admitted that established that he or his witnesses have testified falsely. But moreover, insofar as his claim of prejudice is concerned, I fail to see that had there been an earlier disclosure of the tape recording, there is any reasonable probability that "the result of the proceeding would have been different." *Id.* at 151, 341 S.E.2d at 164 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

In addition to the statutory sanctions of exclusion of evidence, continuances and mistrials, sanctions that trial courts may impose for discovery violations, the courts also possess their contempt power, provided a discovery order has been entered. Additionally, because the Commonwealth's attorneys are required by the standards of professional conduct to abide by a court's orders and to adhere to the Rules of the Supreme Court pertaining to discovery, courts may also institute ethical sanctions rather than distort the truth-finding process. *Stotler*, 2 Va. App. at 484, 346 S.E.2d at 41. Reversal of a valid conviction based upon truthful evidence is not the only method available to appellate courts to assure adherence to discovery requirements.

Furthermore, "[c]ourts must be watchful that impeachment is not used as a subterfuge to place otherwise inadmissible [evidence] before the jury." *United States v. Rogers*, 549 F.2d 490, 497 (8th Cir. 1976), *cert. denied*, 431 U.S. 918 (1977). Nevertheless, many courts, in situations not unlike the one before us, have considered the admissibility of impeachment evidence more important than advancing a prophylactic rule of exclusion, when to do so prevents the jury from being misled through false testimony.

Both state and federal courts have admitted impeachment evidence which was otherwise inadmissible on the theory that the search for the truth is oftentimes more important than overuse of an exclusionary rule as the means for obtaining strict adherence to certain standards.

Evidence that had been obtained from an illegal search was admitted as impeachment evidence to prevent the jury from being misled in *United States v. Havens*, 446 U.S. 620, 627-28 (1980); a confession obtained through an unwarned interrogation in violation of *Miranda* was held admissible for impeachment purposes in *Harris v. New York*, 401 U.S. 222, 226 (1971); a voluntary confession obtained in violation of the Sixth Amendment right to counsel was admitted for impeachment in *Martinez v. United States*, 566 A.2d 1049, 1059 (D.C. 1989); and the fact that an accused exercised her right to remain silent was admitted to impeach a defendant in *People v. O'Sullivan*, 217 Cal. App. 3d 237, 244-45, 265 Cal. Rptr. 784, 787-88 (1990). These decisions, including those of the United States Supreme Court, have permitted illegally obtained or illegally seized evidence to be used for impeachment, even though such evidence was not admissible in the government's case in chief, in order to prevent a subversion of the truth. *See* 4 W. LaFave, *Search and Seizure* § 11.6(a) (2d ed. 1987). For the same reason, I would hold that the trial court did not err by exercising its discretion to admit the evidence, despite the discovery violation, in order to refute the defendant's untrue account of his conversation with Detective Harding.

I concur in the majority's holding that defendant's red shirt and blue pants were lawfully seized under the plain view exception to the warrant requirement. Because the majority found it unnecessary to reach the issue of the juror's mental state, I do not address that issue. However, on the issues we have considered I would not reverse the trial court.