**Richmond**

DANIEL CLAYTON CONWAY

v.

COMMONWEALTH OF VIRGINIA

No. 0482-88-2

Decided July 1, 1991

COUNSEL

Daniel L. Metzger (David J. Johnson; Office of the Public Defender, on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mary Sue Terry, Attorney General, on briefs), for appellee.

Opinion

**KEENAN, J.**—Daniel Conway was convicted in a jury trial of second degree murder. He argues: (1) that the trial court erred in admitting into evidence a recorded statement he made which was not provided to him prior to its admission at trial; (2) that the seizure of a shirt and pants from his bedroom violated his fourth amendment rights; and (3) that the trial court erred in failing to inquire into the mental state of a juror after being notified of a problem by the jury foreman.[1] We hold that the Commonwealth's failure to disclose the recording of Conway's statement was error and therefore reverse his conviction. We hold that Conway's shirt and pants were in plain view when Detective Harding obtained them, and, thus, that their seizure did not violate Conway's fourth amendment rights. Since we reverse Conway's conviction, we do not reach the issue of the juror's mental state.

On November 9, 1987, Keith Madison found his girlfriend, Tina Harper, dead in her room at the Chamberlayne Motel. Harper had red marks around her neck and the police considered her death to be suspicious. Madison told Detective Harding that at the time he discovered Tina's body he saw a man leaving the motel in a red car. The man was wearing a red shirt with a confederate flag on it and a pair of blue pants. Detective Harding determined that the person in the car was the last person to have been with the victim before she died. The car was registered to the defendant, Daniel Conway.

Approximately five hours later, Detective Harding and two other officers went to Conway's home and spoke first to his father. Upon learning that Conway was in the home, they entered the living room when Conway's father opened the door. Conway's mother called Conway into the living room. In front of Conway's parents, Detective Harding asked Conway whether he had been at the Chamberlayne Motel that day. Conway responded that he had not. Without Conway's knowledge, Detective Harding recorded the entire conversation.

---

[1] On September 25, 1990, a panel of this court reversed Conway's second degree murder conviction. 11 Va. App. 103, 397 S.E.2d 263 (1990). A dissenting opinion was filed. Pursuant to Code § 17-116.02(D), this court convened *en banc* to consider the issues presented here.

Harding later testified that he did not believe that Conway was telling the truth when he denied having been at the motel. Detective Harding also testified that he believed he had probable cause to arrest Conway, although he did not do so at that time. Instead, Harding asked Conway to accompany him to the police station for an interview relating to the death of Tina Harper.

Conway left the living room and walked down a hall toward the back of the home. Detective Harding followed him. After using the bathroom, Conway asked Harding if he could change his clothes. Harding told him that he could get a coat. Conway walked to his bedroom, again followed by Harding. When Conway opened the door to the bedroom, Harding saw a red shirt lying beside the door. Harding picked up the shirt and saw that it had a confederate flag on the back. Harding also observed a pair of blue pants lying on the floor under the shirt. Harding seized the shirt and pants.

Conway was advised of his *Miranda* rights in the police car on the way to the station. Conway later admitted to Detective Harding that he had been at the motel earlier that day. He was placed under arrest at that time.

At Conway's trial, the Commonwealth introduced the red shirt and the pants into evidence. In addition, on rebuttal, the Commonwealth introduced the tape recording of Conway's conversation with Harding in the home. Although there was a written discovery order entered in this case, the recording was not provided to Conway prior to its use at trial.

The Commonwealth argues that Conway was aware of the substance of the statement and that the recording of Conway's statement was provided to him as soon as the Commonwealth learned of its existence. Thus, the Commonwealth argues that it should not be penalized for its failure to make the tape available earlier. We disagree.

In the case before us, the trial court entered a written discovery order specifically requiring the Commonwealth to provide without restriction all written or recorded statements made by Conway.[2]

---

[2] The discovery order reads as follows:

A. That the Commonwealth will disclose and permit the defendant to inspect and copy:

The police possessed the tape recording of Conway's statement and the prosecutor could have discovered its existence through the exercise of due diligence. The Commonwealth did not seek a protective order, as authorized by Rule 3A:11(f). Thus, the Commonwealth's introduction of the tape into evidence without first making it available to Conway violated the discovery order entered in this case.

Furthermore, Rule 3A:11(b)(1) provides in pertinent part:

Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph any relevant (i) written or recorded statements or confessions made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the attorney for the Commonwealth.

Unlike the discovery order entered in this case, Rule 3A:11 treats written and oral statements equally. We nevertheless find that the Commonwealth's failure to disclose the tape recording also violated Rule 3A:11.

Rule 3A:11 requires the Commonwealth to allow an accused to inspect and copy or photograph any written or recorded statements, the existence of which is known to the attorney for the Commonwealth. In *Fitzgerald v. Bass*, 6 Va. App. 38, 366 S.E.2d 615 (1988) (en banc), *cert. denied*, 493 U.S. 945 (1989), we held that constructive knowledge is attributed to the prosecutor where information is in the possession of the police, so long as the officer is not a law enforcement official of a different jurisdiction. *Id.* at 50, 366 S.E.2d at 621. Here, one of the investigating officers of

1. All relevant written or recorded statements or confessions made by the accused or copies thereof;

2. The substance of any oral statements or confessions made by the accused to any law enforcement officer, [sic] existence of which is known to the Attorney for the Commonwealth;

3. All written laboratory and scientific reports . . .

C. That all of the foregoing discovery be accomplished no later than March 4, 1988, and that the parties be subject to a continuing duty to disclose any items falling within the scope of this order which were not, and could not with due diligence have been known to counsel on March 4, 1988.

the Richmond Bureau of Police had possession of the tape. Therefore, constructive knowledge of the existence of the tape is attributable to the attorney for the Commonwealth and disclosure was required under Rule 3A:11.

■ Admission of relevant and material evidence at trial which was not previously disclosed as required by a discovery order, however, is not reversible error absent a showing of prejudice. *Davis v. Commonwealth*, 230 Va. 201, 204, 335 S.E.2d 375, 377-78 (1985); *Stotler v. Commonwealth*, 2 Va. App. 481, 484, 346 S.E.2d 39, 40 (1986). In this case, we find that the Commonwealth's failure to produce the tape did prejudice Conway's case. Conway had no opportunity to review the recording and refresh his own recollection of the conversation with Detective Harding prior to testifying at trial. He was impeached by the recording after his testimony was before the jury. While the credibility of both Conway and Detective Harding were before the jury, only Harding had the opportunity to listen to a recording of the conversation prior to testifying about its content.

Prior to trial, the Commonwealth informed Conway of the substance of his statement and Detective Harding's proposed testimony regarding that conversation. However, Conway was not told until after he testified that a recording existed which directly supported Harding's recollection of the conversation and contradicted his own. Therefore, we find that the Commonwealth's failure to disclose the existence of the tape prior to Conway's testimony prejudiced Conway's defense.

Furthermore, we find that the prejudice suffered by Conway was not so slight as to make admission of the tape recording harmless error. The evidence presented at trial was circumstantial and the Commonwealth's case rested to a large extent on the credibility of witnesses. Use of the tape recording during rebuttal without prior disclosure undercut Conway's credibility without the opportunity for explanation or rehabilitation. In closing argument, the Commonwealth repeatedly emphasized that the recording showed that Conway's entire testimony was untruthful and the correct version of events was that presented by the Commonwealth's witnesses. On this record, we cannot say that Conway had a fair trial on the merits of the case. Consequently, the admission of the tape recording was not harmless error and the conviction must be reversed. Code § 8.01-678.

Judge Coleman's dissenting panel opinion argues that the trial court did not err by allowing the Commonwealth to use the tape at trial since it was used only in rebuttal and for impeachment purposes. While we recognize that the United States Supreme Court has sanctioned the impeachment use of evidence obtained in violation of an accused's fourth and fifth amendment rights, *see, e.g., Harris v. New York*, 401 U.S. 222 (1971); *United States v. Havens*, 446 U.S. 620 (1980); *Oregon v. Hass*, 420 U.S. 714 (1975); and other courts have sanctioned the impeachment use of evidence obtained in violation of a defendant's sixth amendment rights, *see, e.g., Martinez v. United States*, 566 A.2d 1049 (D.C. Cir. 1989), *cert. denied*, 111 S. Ct. 685 (1991), we nevertheless find that the impeachment use of the tape constitutes reversible error.

This case is distinguished from the cases relied on by the dissent. In those cases, the court determined that the need to protect the truth-finding process outweighed any possible deterrent on police misconduct. In each of those cases, illegally obtained evidence was admitted for impeachment purposes, but was evidence the existence of which was known to the defendant. Here, however, the defendant learned of the tape recording only after he had testified before the jury. In addition, the tape recording expressly contradicted Conway's testimony as to what was said at the trailer prior to his arrest. Thus, none of the remedies afforded by Code § 19.2-265.4, except exclusion of the evidence or a mistrial, would have afforded him a fair opportunity to respond to this evidence. Accordingly, we find that the trial court's action was an abuse of discretion requiring the reversal of Conway's conviction.

Conway further argues that the seizure of the red shirt and blue pants from his bedroom violated his fourth amendment rights. Conway maintains that the seizure of the clothing did not fall within the "plain view" exception to the warrant requirement since Detective Harding had no right to be in his bedroom and the items' evidentiary significance were not immediately apparent to the officers.

The Commonwealth argues that the seizure of the items was permissible because the officer had probable cause to arrest Conway in the living room and thus the search was equivalent to a search incident to arrest. In the alternative, the Commonwealth argues that the seizure was permissible under the plain view ex-

ception to the warrant requirement. We find that the items were in plain view and were, therefore, lawfully seized.[3]

■ The plain view exception to the warrant requirement was first set forth by the Supreme Court in a plurality opinion in *Coolidge v. New Hampshire*, 403 U.S. 443, 464-70 (1971). In *Stokes v. Commonwealth*, 4 Va. App. 207, 355 S.E.2d 611 (1987), this Court applied the three-prong test set forth by the *Coolidge* plurality. Since our decision in *Stokes*, a majority of the Supreme Court has accepted the plurality holding in *Coolidge* as binding precedent with one exception: the inadvertance requirement is no longer a necessary condition for a seizure to be lawful under the plain view doctrine. *Horton v. California*, 496 U.S. 128 (1990). Accordingly, we hold that in order for a seizure to be permissible under the plain view doctrine, two requirements must be met: "(a) the officer must be lawfully in a position to view and seize the item, [and] (b) it must be immediately apparent to the officer that the item is evidence of a crime, contraband, or otherwise subject to seizure." *See Stokes*, 4 Va. App. at 209, 355 S.E.2d at 612.

We find that Detective Harding was lawfully in Conway's bedroom, satisfying the first prong of the plain view test. Conway conceded at the motion to suppress that Harding entered the living room portion of the trailer upon invitation and with consent. Thus, the only issue before us is whether the officer could follow Conway from the living room to the bedroom.

■ In *Washington v. Chrisman*, the United States Supreme Court held that once a police officer has arrested a suspect, he is entitled to accompany that person to any location, including into the person's home. 455 U.S. 1, 7 (1982). The court explained:

[I]t is not "unreasonable" under the Fourth Amendment for a police officer, as a matter of routine, to monitor the movement of an arrested person, as his judgment dictates, following the arrest. The officer's need to ensure his own safety — as well as the integrity of the arrest — is compelling. Such

---

[3] We need not address, therefore, the Commonwealth's argument that the officers had probable cause to arrest Conway in his living room. In addition, we do not decide whether the pre-arrest seizure would have been lawful in the event that probable cause to arrest Conway existed.

surveillance is not an impermissible invasion of the privacy or personal liberty of a person who has been arrested.

*Id.*

In *Servis v. Commonwealth*, 6 Va. App. 507, 371 S.E.2d 156 (1988), this court applied the same rationale in the context of an investigative detention. There, the police had been called to a hotel to investigate a report by one of the occupants of an attempted break-in. Upon arriving at the hotel, the officers observed the room, but saw nothing unusual. They then knocked on the room door. The defendant answered the door after several knocks, told the officers that the room was registered to another individual and refused to allow the officers to enter the room. The officers testified that the defendant appeared nervous and under the influence of an intoxicant. The officers continued to watch the room. Later, one of the officers returned to the room and asked the defendant if he owned the car registered to the room. The defendant indicated that he did own the car. The officer asked him again to whom the room was registered and the defendant named a different individual than he had named previously. At that point the officer asked the defendant for identification. When the defendant turned and walked quickly into an adjoining room, the officer followed him into the room. Once in the room, the officer seized several items of drug paraphernalia.

The court concluded that the officer was lawfully in the room and that the items seized were in plain view. In reaching this conclusion, the court held:

> [P]olice officers may, whenever they possess an articulable and objectively reasonable belief that a suspect is presently or potentially dangerous, conduct a protective search of the area within the suspect's immediate control. If the suspect moves about, an officer is justified in staying with the individual during the course of the stop and conducting a protective search of the areas which come within the suspect's immediate control, even if this action necessitates entry into the suspect's home.

*Id.* at 519, 371 S.E.2d at 162 (citations omitted).

In the case before us, Detective Harding's entry into the trailer was consensual. Once inside, he was never told that he could not follow Conway to the back of the trailer, although Conway's mother did tell Harding that Conway was not going anywhere. Harding was investigating a suspicious death in which drugs or manual strangulation were the suspected causes of death. Although Conway's vehicle was seen leaving the scene at the same time the victim's body was discovered, Conway denied having been at the motel. In addition, when asked by the detective to accompany him to the police station, Conway headed toward the rear of the house. Based on these facts, we find that Harding had an objectively reasonable belief that Conway was potentially dangerous. We further find, for the reasons articulated in *Servis*, that Harding lawfully followed Conway to the back of the house and into the bedroom. *Accord Commonwealth v. Daniels*, 280 Pa. Super. 278, 281, 421 A.2d 721, 723 (1980).

■ We are not persuaded, as argued by Judge Benton in his dissenting opinion, that this holding is inconsistent with the United States Supreme Court's decision in *Maryland v. Buie*, 494 U.S. 325 (1990). In that case, the Court held:

[t]he Fourth Amendment permits a properly limited protective sweep in conjunction with an in home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene.

*Id*. at 337. The officers entered Buie's home pursuant to an arrest warrant. Buie was arrested, searched and handcuffed as he emerged from the basement. Subsequently, a police officer entered the basement on the chance that someone else was down there. In concluding that such a protective sweep was permissible, the court reasoned:

In [*Terry v. Ohio*, 392 U.S. 1 (1968)] and [*Michigan v. Long*, 463 U.S. 1032 (1983)] we were concerned with the immediate interest of the police officers in taking steps to assure themselves that the persons with whom they were dealing were not armed with or able to gain immediate control of a weapon that could unexpectedly and fatally be used against them. In the instant case, there is an analogous interest of

the officers in taking steps to assure themselves that the house in which a suspect is being or has just been arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack. The risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter.

*Id.* at 333.

The officers entered Buie's home pursuant to a warrant. Detective Harding entered Conway's trailer pursuant to an invitation. In both circumstances, the officers were lawfully within the home. Although Detective Harding had not placed Conway under arrest, he had informed Conway that he wanted to speak with him about the death of Tina Harper and had asked Conway to accompany him to the police station. We find that the potential for danger to the officer under these circumstances was similar to that existing in *Buie*, and justified the limited intrusion which occurred in this case.

■ Conway also argues that the seizure was improper because it was not immediately apparent to Detective Harding that the items were actually evidence of a crime. Conway contends that since the red shirt was a common item, its significance did not become apparent until the officer had picked it up, revealing the confederate flag. We find, however, that the fact that the flag was not immediately apparent does not dispose of the issue. In *Arizona v. Hicks*, 480 U.S. 321 (1987), the Supreme Court held that the standard for invoking the plain view doctrine is probable cause. Thus, to lawfully seize an item under the plain view exception to the warrant requirement, the officer must have probable cause to believe that the item in question is evidence of a crime or contraband. *Id.* at 323, 326-27.

In the case before us, we find that this standard was met. Although Detective Harding may not have had probable cause to arrest Conway in the living room, the circumstances which made Harding's presence in Conway's bedroom lawful, coupled with Harding's knowledge that the man leaving the scene in Conway's car was wearing a red shirt and blue pants and Harding's discovery of a red shirt on Conway's floor, suggesting recent use of the garment, were sufficient to give Harding probable cause to believe

that the shirt was evidence of a crime. The same analysis applies to the seizure of the pants, which also were in plain view. Therefore, we hold that the shirt and pants were lawfully seized and the trial court did not err in admitting them into evidence.

For the reasons stated, we reverse Conway's conviction and remand this case to the trial court for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*

Koontz, C.J., Barrow, J., Duff, J., Moon, J., and Willis, J., concurred.

Coleman, J., with whom Cole, J.* joins, concurring and dissenting.

A majority of the court sitting en banc reverses the trial court and assigns the same reasons expressed by a panel of this court whose opinion is reported at 11 Va. App. 103, 397 S.E.2d 263 (1990). As a member of that panel, I expressed my separate views in an opinion reported in 11 Va. App. at 111, 397 S.E. at 268, in which I concurred with the majority there, as I do here, that the failure of the Commonwealth's attorney to disclose to the defendant the tape recording of his conversation with Detective Harding was a violation of the trial court's discovery order and of Rule 3A:11. However, for the reasons which I more fully set forth at 11 Va. App. at 111-14, 397 S.E.2d at 268-70, the trial court did not, in my opinion, commit error when, after discovering the violation, it refused to preclude the playing of the taped conversation in rebuttal and refused to declare a mistrial. Because the defendant had been informed during discovery of the substance of the taped conversation, I do not believe that the court erred by permitting the Commonwealth to introduce the recorded conversation in rebuttal in order to prevent the jury from being misled. I fail to see how disclosure of the tape recorded conversation, which confirmed other testimony, could be considered to have prevented Conway from receiving a fair trial or obtaining substantial justice. Code § 8.01-678. Accordingly, because I would not reverse the judgment of conviction, I dissent.

---

\* Judge Cole participated in the hearing and decision of this case prior to the effective date of his retirement on April 30, 1991 and thereafter by designation pursuant to Code § 17-116.01.

I concur with the majority that the pants and shirt were lawfully seized items of evidence.

Benton, J., concurring and dissenting.

I concur in the holding that the trial judge erred in admitting as evidence a recorded conversation between Daniel Clayton Conway and a police officer that was not disclosed to Conway as required by a discovery order and the Rules of Court. I also concur in the holding that the error constitutes reversible error.

I dissent from the holding that the officer's seizure of Conway's shirt was lawful. Warrantless searches and seizures inside a residence are presumptively unreasonable. *Payton v. New York*, 445 U.S. 573, 586 (1980). Thus, the Commonwealth bears a "heavy burden" when attempting to justify a warrantless seizure. *Welsh v. Wisconsin*, 466 U.S. 740, 749 (1984). Because the Commonwealth relies upon the plain view doctrine to justify the seizure, the Commonwealth must prove that clearly incriminating evidence was seized from a place where the officer had a lawful right to be. *Coolidge v. New Hampshire*, 403 U.S. 443, 446 (1971).

The evidence in this case does not establish that the officer had a right to be in Conway's bedroom. The officer's testimony established that he was not invited into Conway's bedroom or to any other place in the residence beyond the room of his initial entry. The officer testified that after he told Conway that he wanted Conway to accompany him to a police station to discuss the death of a female, Conway "walked back [to get a coat] and I started to follow him and his mother told me that he was not going anywhere. I said, I just wanted to make sure." Thus, without invitation or consent, and despite the mother's objection, the officer followed Conway when Conway "used the bathroom." The officer then followed Conway to his bedroom and "allowed" Conway to get his coat. No exigent circumstances or any other recognized judicial doctrine justified this assertion of official authority as a basis for intruding into the private areas of Conway's residence. *See Servis v. Commonwealth*, 6 Va. App. 507, 529-34, 371 S.E.2d 156, 167-70 (1988) (Benton, J., dissenting).

Further, "[t]he [United States] Supreme Court has consistently refused . . . to engage in a balancing of competing interests or to sustain a search on less than probable cause when the search oc-

curred in a place where society recognizes a strong interest in privacy." *United States v. Winsor*, 846 F.2d 1569, 1578 (9th Cir. 1988). Such highly regarded privacy interests have only been compromised in accordance with *Terry* principles when the police have been armed with an arrest warrant issued by a neutral and detached magistrate. *Maryland v. Buie*, 494 U.S. 325 (1990). In that narrow instance, the Court considered it reasonable for an officer to conduct a limited protective sweep based on "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 334. As Justice Stevens emphasized in his concurrence, the *Buie* court held "that reasonable suspicion . . . is necessary to support a protective sweep while an *arrest is in progress.*" *Id.* at 337 (emphasis added). In *Buie*, the Supreme Court expressly adhered to its position that probable cause is required to effect a nonconsensual or nonexigent intrusion into one's legitimate expectation of privacy. *Id.*

I believe the majority mistakenly adopts the position that *Buie* is consistent with today's decision. The Supreme Court was unequivocal in *Buie* that its extension of *Terry* principles to justify an elevated police intrusion into the inner-sanctum of a person's home was premised not on whether the officer was lawfully in the home but whether the officer was making an arrest under the authority of a warrant. Nowhere in the text of *Buie* did the Court imply that a protective sweep of a private residence may be premised merely on a reasonable suspicion that some unidentified element harbored within the house may pose a danger to the officer. In fact, the Court was meticulous in its effort to avoid such a reading. I quote at length:

> A "protective sweep" is a quick and limited search of premises, *incident to an arrest* and conducted to protect the safety of police officers or others. It is *narrowly confined* to a cursory visual inspection of those places in which *a person* might be hiding.
>
> \* \* \*
>
> A *Terry* or *Long* frisk occurs before a police-citizen confrontation has escalated to the point of arrest. A protective sweep, in contrast, occurs as an *adjunct* to the serious step of

*taking a person into custody* for the purpose of prosecuting him for a crime.

\* \* \*

Nor do we here suggest, as the State does, that entering rooms not examined *prior to arrest* is a *de minimum* intrusion that may be disregarded. We are quite sure, however, that the arresting officers are permitted in such circumstances to take reasonable steps to ensure their safety after, and while making, *the arrest*.

\* \* \*

We also hold that as an *incident to the arrest* the officer could, as a precautionary matter and without probable cause or reasonable suspicion, *look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched*. Beyond that, however, we hold that there must be articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept *harbors an individual* posing a danger to those on the *arrest* scene.

\* \* \*

The sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger and in any event no longer than it takes to complete the *arrest* and depart the premises.

\* \* \*

The type of search we authorize today is far removed from the "top-to-bottom" search involved in *Chimel*; moreover, it is decidedly not "automati[c]," but may be conducted only when justified by a reasonable, articulable suspicion that the house is *harboring a person* posing a danger to those on the *arrest scene*.

\* \* \*

The Fourth Amendment permits a properly limited protective sweep in conjunction with an *in-home arrest* when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept *harbors an individual* posing a danger to those on the *arrest* scene.

494 U.S. at 327-37 (emphasis added).

*Buie* by no stretch of the imagination justifies the intrusion that occurred in Conway's home. The Court's precise language limited protective sweeps only to instances of in-home arrests presumptively founded upon probable cause. As the search in this case was not made in conjunction with an in-home arrest, it does not fall within the ambit of any recognized exception to the Fourth Amendment reasonableness requirement. I disagree, therefore, with the unprecedented proposition that an officer may conduct a protective sweep of a person's home, based on a suspicion of danger to the officer, whenever the officer is lawfully within the home of someone who the officer is not lawfully arresting. *Buie* is not precedent for this expansion of police discretionary conduct accomplished at great expense to fundamental constitutional protections.

Conway was not under arrest and was lawfully within his own residence. Without justification or consent, the officer roamed into rooms other than the one to which the threshold carried him. The majority adopts the unprecedented theory that a police officer, upon a warrantless entry of a residence, may wander and search into the private recesses of that residence under the guise of some nebulous and unarticulated safety concern that the occupant may be implicated in a crime. The majority simply sweeps away the significance of the exigency that occurs during an arrest and allows an unprecedented search of a residence under the guise of a "potential for danger." That rubric will support unlawful police action whenever an officer perceives a need to conduct a search. Just as in *Servis*, the majority simplistically equates suspicion with "potential for danger" and thereby perpetuates the erosion of the fourth amendment in Virginia. The officer's conduct was unreasonable, unlawful, and cause to exclude evidence that was obtained.

Moreover, when the officer followed Conway as he went to get a coat, the officer had, at best, only reasonable suspicion that the red t-shirt he saw in Conway's room was the same "red shirt with a rebel flag on the back" that was worn by the person who drove away from the motel. In order to confirm his suspicion, the officer picked up the shirt to expose the back, which was not visible while the shirt was on the floor. He seized the shirt when he saw the flag on the back, and he also seized a pair of blue jeans that he discovered when he lifted the shirt. The plain view doctrine does not

apply under these circumstances. *See Lance v. State*, 425 N.E.2d 77, 81 (Ind. 1981) (plain view doctrine inapplicable where blood stains were not readily apparent until officers picked up trousers and examined them).

The officer's suspicion that the shirt may have had a flag on its back did not amount to probable cause to believe that the shirt was incriminating evidence. He possessed no privilege or authority to lift the shirt to verify his suspicion.

> [T]he "distinction between 'looking' at a suspicious object in plain view and 'moving' it even a few inches" is much more than trivial for purposes of the Fourth Amendment. It matters not that the search uncovered nothing of any great personal value to [the accused] — serial numbers rather than (what might conceivably have been hidden behind or under the equipment) letters or photographs. A search is a search, even if .it happens to disclose nothing but the bottom of a turntable.

*Arizona v. Hicks*, 480 U.S. 321, 325 (1987). If "an officer discovers facts which give him reason to believe that evidence of a crime will be found by a further intrusion beyond the scope of the original intrusion, the 'plain view' doctrine is inapplicable unless there is some independent justification for such further intrusion." *United States v. Bradshaw*, 490 F.2d 1097, 1101 (4th Cir.), *cert. denied*, 419 U.S. 895 (1974).

Because the warrantless search and seizure occurred at a place where the officer had no right to be and were not based on probable cause, I would hold that the trial judge erred in denying the motion to suppress.