COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Coleman
Argued at Richmond, Virginia


GERALD CHRISTOPHER CARTER
                                        MEMORANDUM OPINION[*] BY
v.    Record No. 0418-02-2           JUDGE SAM W. COLEMAN III
                                             MAY 20, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                   Robert W. Duling, Judge Designate

            Gregory W. Franklin, Assistant Public
            Defender, for appellant.

            John H. McLees, Senior Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     Gerald C. Carter appeals his bench trial conviction for

possession of cocaine.  He argues that the trial court erred by

denying his motion to suppress the evidence obtained during a

warrantless search of his residence.  He contends (1) the initial

search exceeded the scope of the consent to enter the residence,

(2) the police improperly seized evidence during a protective

sweep of the home, and (3) the consent by his mother to search the

residence was not voluntarily given.  For the reasons that follow,

we agree that the police improperly seized the contraband and we

reverse Carter's conviction.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

## Background

"In reviewing a trial court's denial of a motion to suppress, 'the burden is upon the defendant to show that the ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error.'" McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citation omitted). "[W]e review de novo the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." Hayes v. Commonwealth, 29 Va. App. 647, 652, 514 S.E.2d 357, 359 (1999) (citation omitted). "In performing such analysis, we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee, 25 Va. App. at 198, 487 S.E.2d at 261 (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)).

On June 7, 2001, Detective Fred Bates and two other police officers responded to a complaint of illegal drug activity at Carter's address. Gerald Carter shared the house with his mother and girlfriend. Bates and Detective Graves knocked on the front door, and Detective Godfrey went to the back of the house. Gerald Carter and his mother, Antonia Carter, answered the door. The detectives identified themselves, displayed their

-

badges, and asked if they could enter to discuss the drug complaint.  Antonia Carter invited the officers inside.

Immediately upon entering the residence, Bates observed Gerald Carter throw an object into a bedroom located directly adjacent to the front entryway.  Bates testified he could not identify the object but he heard it land in the bedroom and stated it sounded "metallic."  Concerned that the object Carter threw might have been a gun, Bates stepped into the bedroom to investigate.

Bates saw three people in the bedroom.  He quickly scanned the room for weapons and turned to leave.  He then saw a large spoon lying face-up on a table with a brown residue clearly visible on the spoon.  Bates returned to the living room and asked Antonia Carter for permission to search the residence. She began crying, and Carter attempted to persuade her to refuse Bates' request to search the house.  Antonia Carter asked Bates what options she had, and Bates explained if she consented to the search the police would leave her home quickly.  At that point, Bates returned to the bedroom, retrieved the spoon, showed it to Antonia Carter, and explained that it appeared to be drug paraphernalia.  He also stated he would attempt to obtain a search warrant if she did not give the officers permission to search.  Bates informed Antonia Carter that the officers may have to handcuff some of the people in the

-

residence while they awaited the search warrant.  Antonia Carter
eventually consented to the search.  The detectives discovered
various items of drug paraphernalia inside the residence.  The
spoon contained cocaine residue.  Gerald Carter was arrested and
charged with possessing cocaine.

## Analysis

## Protective Search

Gerald Carter argues the officers unlawfully entered the
bedroom after his mother invited them into the house.  He
concedes the officers were lawfully in the residence.

> [P]olice officers may, whenever they possess
> an articulable and objectively reasonable
> belief that a suspect is presently or
> potentially dangerous, conduct a protective
> search of the area within the suspect's
> immediate control.

Servis v. Commonwealth, 6 Va. App. 507, 519, 371 S.E.2d 156, 162
(1988).  We have held that a protective sweep is permissible
even where the suspect was not under arrest, as long as the
officers' entry into the residence was consensual.  See Conway
v. Commonwealth, 12 Va. App. 711, 720, 407 S.E.2d 310, 314
(1991) (en banc).  As in Conway, the officers in this case were
in the residence by virtue of the homeowner's consent.

Bates testified that immediately upon the officers entering
the residence, Carter threw a metallic object into an adjacent
room.  Bates heard the object land and investigated based upon a

-

concern for officer safety.  When Bates entered the room he was surprised to find three people there, and he quickly glanced around the room looking for a firearm.  Bates provided a reasonable, articulable basis for conducting a cursory protective sweep of the area accessible to and in close proximity to Gerald Carter.

## Plain View

For the plain view "exception to the warrant requirement to apply, the record must show (1) a prior justification for the intrusion . . . and [(2)] immediate knowledge by the official that the evidence he is observing is probably contraband." Jones v. Commonwealth, 29 Va. App. 363, 369, 512 S.E.2d 165, 168 (1999).  As explained above, the police were lawfully in the residence pursuant to Antonia Carter's permission.  Bates performed a permissible protective sweep of the area and was lawfully in the bedroom when he saw the spoon.

However, at trial, Bates testified only that he observed the spoon on a table and that "[a]s soon as [he] saw that spoon, [he] could see some type of what [he] believed to be brown residue on the spoon."  He left the room and spoke with Carter's mother in an attempt to persuade her to consent to a full search of the house.  He then returned to the room and asked one of the occupants to give him the spoon.  He turned it over and saw burn

-

marks on the back "where [he] could tell it was probably used for drug activity . . . ."

Bates never testified that he immediately recognized the spoon as drug paraphernalia when he saw it during the protective sweep. When he entered the room looking for a weapon, Bates saw a spoon with some type of residue on it but he at no time indicated that what he observed led him to believe that the spoon contained drug residue rather than some other substance. Instead, only upon further investigation did Bates indicate that he determined the spoon was likely used for the preparation of illegal drugs and contained drug residue. When Bates first observed the spoon during the protective sweep of the bedroom, he saw only that it contained a brown residue. When he seized the spoon and examined it more closely he observed burn marks which gave him reason to believe that the residue was illicit drugs.

"[T]he standard for invoking the plain view doctrine is probable cause. Thus, to lawfully seize an item under the plain view exception to the warrant requirement, the officer must have probable cause to believe that the item in question is evidence of a crime or contraband." Conway, 12 Va. App. at 718, 407 S.E.2d at 314. The evidence established that Bates saw nothing incriminating about the residue-coated spoon until after he seized the object and inspected it. See Arizona v. Hicks, 480

-

U.S. 321, 326 (1987) (holding that stolen stereo not properly seized under plain view doctrine because officers had to move stereo to see serial numbers which allowed them to conclude item was stolen). Thus, we hold as a matter of law that the plain view exception to the warrant requirement does not apply. Although Bates was lawfully in the bedroom for a protective weapons sweep when he saw the spoon, he did not possess probable cause at the time to believe it contained illegal drugs thereby permitting him to seize it. Bates impermissibly returned to the spoon to seize and inspect it without a warrant. Thus, the trial court erred by denying Carter's motion to suppress the spoon and cocaine residue and the evidence subsequently derived from its seizure and the search that followed.

### Consent

The Commonwealth does not rely upon consent to enter the residence as the legal basis for entering the bedroom and the search which revealed the spoon. As to Antoina Carter's subsequent consent to search her house, she gave such consent only after Bates illegally seized the spoon and contraband. Because the dispositive issue here is whether the police had lawfully seized the spoon, we need not address Carter's contention that his mother's subsequent consent was not voluntarily given.

-

For the reasons stated above and because the evidence suppressed is essential to the conviction, we reverse Carter's conviction and dismiss the indictment against him.

Reversed and dismissed.

Benton, J., concurring, in part, and in the judgment reversing the conviction.

For the reasons I have previously stated in Conway v. Commonwealth, 12 Va. App. 711, 723-27, 407 S.E.2d 310, 316-19 (1991) (Benton, J., concurring and dissenting), and Servis v. Commonwealth, 6 Va. App. 507, 525-34, 371 S.E.2d 156, 165-74 (1988) (Benton, J., dissenting), I would hold that the police may not make a "protective sweep" of a person's residence after a warrantless entry to the residence except after, and while making an arrest. In addition, even under those circumstances, the record must establish specific and articulable facts indicating that the area to be swept harbors a person posing a danger to the arresting officers. See Maryland v. Buie, 494 U.S. 325, 335-37 (1990). Thus, I concur in the parts of the opinion styled Background and Consent, in the holding that the officer impermissibly inspected and seized the spoon without a warrant, and in the judgment reversing the conviction and dismissing the indictment. See Arizona v. Hicks, 480 U.S. 321 (1987); Coolidge v. New Hampshire, 403 U.S. 443, 474-77 (1981).

-