COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


YAZID ABUNAAJ
                                        OPINION BY
v.   Record No. 1854-97-4   CHIEF JUDGE JOHANNA L. FITZPATRICK
                                        JULY 21, 1998
COMMONWEALTH OF VIRGINIA

           FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                  Benjamin N.A. Kendrick, Judge

         Jonathan Shapiro for appellant.

         Donald E. Jeffrey, III, Assistant Attorney
         General (Mark L. Earley, Attorney General, on
         brief), for appellee.


     Yazid Abunaaj (appellant) was convicted in a jury trial of

rape in violation of Code § 18.2-61 and animate object sexual

penetration in violation of Code § 18.2-67.2.  On appeal, he

contends the trial court erred in:  (1) admitting a tape

recording of a telephone conversation he had with the victim; (2)

giving insufficient cautionary instructions and rulings regarding

alleged pretrial offers of payment to potential witnesses; (3)

allowing testimony that appellant was HIV-positive; and (4)

refusing to grant surrebuttal testimony.  For the following

reasons, we reverse the convictions.

                          I.  Background

     "[W]e review the evidence in the light most favorable to the

Commonwealth, granting to it all reasonable inferences fairly

deducible therefrom."  Pavlick v. Commonwealth, 25 Va. App. 538,

541, 489 S.E.2d 720, 721 (1997), aff'd, 27 Va. App. 219, 497 S.E.2d 920 (1998) (en banc).  Appellant and the victim, D.T., worked at adjoining businesses in a shopping mall.  They met on March 28, 1996, when D.T. and her husband had their hair cut at appellant's workplace.  D.T. knew appellant by sight but denied the existence of a closer relationship prior to that date.

On April 2, 1996, D.T. and appellant met after work and spent thirty to forty-five minutes parked in his car.  D.T. testified that during their conversation appellant expressed an interest in a relationship with her but she refused, saying they could be friends.  She further testified that appellant did not kiss her or touch her while they were talking in the car.  Appellant testified that he and D.T. engaged in intimate kissing and touching while in the car, and they attempted, but did not complete, sexual intercourse.  When D.T. returned home that evening she did not tell her husband of her meeting with appellant.

The next morning, April 3, 1996, D.T. went to work, but, due to a scheduling mix-up, another employee, Hong Nguyen, was also present.  They decided that Nguyen would work the morning shift and D.T. would work in the afternoon.  After she left the store, D.T. saw appellant in the mall and agreed to go to lunch with him.  When they left for lunch, appellant said he had to stop by his house to retrieve something, and they drove to his home in Arlington.

Appellant showed D.T. around the house, and when they reached his bedroom he began to make advances toward her and kiss her. She said, "No, I told you we were going to lunch." He relented and asked her to look at pictures while he completed a few chores. Appellant left the room for a moment and when he returned he pushed D.T. down on the bed and tried to kiss her. She told him no, but "he wouldn't leave me alone." She testified, "I wanted to leave but he wouldn't let me go." She resisted as he attempted to remove her clothing. They struggled "for quite a while," until appellant pinned D.T. on her stomach, removed his pants and her underpants, and penetrated her vagina with his finger and his penis. When he was done, he got up "as if nothing had happened" and suggested they shower together.

While appellant showered, D.T. dressed and left appellant's house in tears. She used the phone at a service station two blocks away to call a cab. The cab took her to the shopping mall, where she stopped at an ATM for the fare and drove home. When D.T. arrived at home she called Nguyen and asked Nguyen to cover her shift that afternoon. Throughout the afternoon and evening appellant stopped in and phoned the store, asking about "the girl."

Later, D.T. informed her husband of the attack and reported the rape. The police photographed bruises on her arm and sent her to the hospital for an examination. Officer Kevin White saw "visually obvious" developing bruises on both of D.T.'s forearms

-3-

in the "wrist area."

At trial, the defense called eight witnesses who testified that appellant and D.T. had friendly contact at the mall. In his own defense, appellant testified that D.T. had consented to have intercourse. The Commonwealth put on rebuttal evidence, much of which was admitted over defense objection. The contested evidence included a tape recorded conversation between appellant and D.T. the day after the incident and testimony from Mark Wright, an inmate in jail with appellant, regarding appellant's HIV status. The trial court denied appellant's request to put on surrebuttal evidence in response to the tape recording and Wright's testimony.

## II.  Tape Recording

The Commonwealth cross-examined appellant about a telephone conversation he had with D.T. the day after the incident. Appellant testified that he remembered the conversation but could not recall specifics. He denied apologizing to D.T. for not letting her leave his house and denied saying he had lost control.

On rebuttal, the Commonwealth produced a tape recording of the conversation, revealing that the day following the incident, at the request of the police, D.T. had initiated telephone contact with appellant from police headquarters. D.T. testified that Detective Chase told her to tell appellant she had said, "no." Police officers recorded the call on police equipment and

-4-

were present in the room with D.T. during the entire conversation, part of which took place on a speaker phone. Appellant objected to the admission of the tape on the ground it had not been disclosed to the defense pursuant to his discovery request. The trial court overruled appellant's objection and denied his request to review the tape prior to its introduction into evidence.

The Commonwealth played the tape and distributed transcripts to the jury. On the tape, appellant made the following statements: "I know. I know you didn't want to do it. I don't know why. I know I've been stupid, a little bit." In response to D.T.'s statement that she could not understand his behavior, appellant said: "Okay. I've been crazy. I've been stupid. I've been, I make a mistake. I make a mistake. Now, I'm sorry about it. I'll try to do my best to prove I'm not that way. I just lost my control for, I don't know."

Appellant contends the Commonwealth's failure to disclose the existence of the tape and its contents violated its obligation under the parties' consent discovery order to turn over all recorded statements made to law enforcement officers. We agree.

The parties' consent discovery order, entered July 24, 1996, was a limited version of Rule 3A:11.[1] The order provided for

---

[1] The parties' consent discovery order inserts language limiting the Commonwealth's disclosure obligation to recorded statements made by appellant "to law enforcement officers." Rule 3A:11 distinguishes between unrecorded statements and

inspection of "[a]ll written or recorded statements or confessions made by the accused <u>to law enforcement officers</u>, or copies thereof, or the substance of any oral confessions or oral statements made by the accused to any law enforcement officer." (Emphasis added). Appellant's trial counsel agreed to the limited form of the order in response to the prosecutor's assurance of "open file" discovery. This Court has held that a consent discovery order, rather than Rule 3A:11, will govern discovery in a criminal case when such an order is in place. <u>See</u> <u>Williams v. Commonwealth</u>, 16 Va. App. 928, 934–35, 434 S.E.2d 343, 347 (1993) (enforcing consent discovery order identical in relevant part to the instant order).[2]

recorded statements. Rule 3A:11(b)(1) provides: "Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph any relevant (i) written or recorded statements or confessions <u>made by the accused</u>, or copies thereof, or the substance of any oral statements or confessions <u>made by the accused to any law enforcement officer</u>, the existence of which is known to the attorney for the Commonwealth . . . ." (Emphasis added). Under Rule 3A:11, appellant's recorded statements known to the Commonwealth must be disclosed, whether or not they were made to law enforcement officers. The Rule requires disclosure of appellant's unrecorded statements only if they were made to law enforcement officers. Virginia is one of several states that draws this distinction. <u>See</u> 2 LaFave & Israel, <u>Criminal Procedure</u> § 19.3(c) (1991).

[2]The Commonwealth argues that this Court's decision in <u>Williams</u> relieved it of the duty to disclose the taped conversation. <u>See</u> <u>Williams v. Commonwealth</u>, 16 Va. App. 928, 434 S.E.2d 343 (1993). In <u>Williams</u>, the Commonwealth was not required to disclose the defendant's letter instructing a friend on his testimony, because there was no evidence the friend was a law enforcement officer or that the police were involved in initiating the contact or were active participants in it. <u>See</u> <u>id.</u> The instant case is distinguishable on the basis of the degree of police involvement and participation in the challenged

By means of the consent discovery order and a separate letter restricting its "open file" policy to evidence to be used during its case-in-chief, the Commonwealth limited its disclosure obligation. Assuming without deciding that the Commonwealth's procedure effectively fulfilled its duty to disclose, see United States v. Brodie, 871 F.2d 125 (D.C. Cir. 1989) (pretrial disclosure under Federal Rule of Criminal Procedure 16 applies to statements of the defendant to be used in impeachment as well as case-in-chief); United States v. Scafe, 822 F.2d 928, 935 (10th Cir. 1987) (Rule 16(a)(1)(A) is not restricted to statements to be used in the case-in-chief, it applies to "relevant written or recorded statements made by the defendant" irrespective of their intended use); United States v. Caldwell, 543 F.2d 1333 (D.C. Cir. 1974), cert. denied, 423 U.S. 1087 (1976) (applying federal disclosure rules to statements made to third parties as well as to agents of the government), we consider whether the Commonwealth's failure to disclose the recorded conversation violated the terms of the consent discovery order.

The consent discovery order required disclosure of all recorded statements of the accused "made to law enforcement officers." Under the circumstances of this case, the recorded statements were effectively made to the police. D.T. called appellant from the police station on a police speaker phone. The police initiated the contact and recorded the call on their communication.

-7-

equipment. Police officers coached D.T. on what to say and were present in the room at the time of the call. Although appellant was speaking to the victim, these facts demonstrate police involvement to such a degree that appellant's statements were effectively made to the police as well.

Additionally, D.T.'s compliance with police requests effectively made her an agent of the police. D.T. initiated telephone contact with appellant because a police officer told her it would be in her best interests. She phoned from the police station and allowed the call to be recorded on police equipment for the same reason. She lied to appellant and told him she was calling from home to avoid revealing her location. She followed a detective's instructions and told appellant she said "no" to his advances. Because appellant's statements were made directly to an agent of the police who was in the presence of police officers, and they were recorded on police equipment, the tape of the conversation constituted a recorded statement made to law enforcement officers. Consequently, we hold that even under the limited discovery order, the Commonwealth was required to produce the tape recording and transcript of the conversation for appellant's inspection, and its failure to do so was a violation of even the limited discovery order.

To be entitled to relief, appellant must demonstrate prejudice resulting from the discovery violation. See Conway v. Commonwealth, 12 Va. App. 711, 716, 407 S.E.2d 310, 313 (1991)

(en banc) (Commonwealth violated discovery order by failing to disclose a tape recording of the defendant's conversation with the police). The instant facts resemble the situation in Conway, where, "[w]hile the credibility of both Conway and Detective Harding were before the jury, only Harding had the opportunity to listen to a recording of the conversation prior to testifying about its content." Id. at 716, 407 S.E.2d at 313. Although the Commonwealth disclosed to the defense the substance of Conway's conversation with Detective Harding,

> Conway was not told until after he testified that a recording existed which directly supported Harding's recollection of the conversation and contradicted his own. Therefore, we find that the Commonwealth's failure to disclose the existence of the tape prior to Conway's testimony prejudiced Conway's defense.
> Furthermore, we find that the prejudice suffered by Conway was not so slight as to make admission of the tape recording harmless error. The evidence presented at trial was circumstantial and the Commonwealth's case rested to a large extent on the credibility of witnesses. Use of the tape recording during rebuttal without prior disclosure undercut Conway's credibility without the opportunity for explanation or rehabilitation. In closing argument, the Commonwealth repeatedly emphasized that Conway's entire testimony was untruthful and the correct version of events was that presented by the Commonwealth's witnesses. On this record, we cannot say that Conway had a fair trial on the merits of the case.

Id. at 716, 407 S.E.2d at 313.

The prejudice was equally compelling in the instant case. Appellant, unaware of the existence of the tape, acknowledged on

cross-examination that he spoke with D.T. the day after the incident, but as he recalled the conversation six months earlier, he denied making several statements. Appellant first became aware of the existence of the tape when the Commonwealth introduced it to attack his credibility on rebuttal.

Here, as in Conway, the Commonwealth's case relied upon circumstantial evidence and the credibility of the witnesses. The prosecution's use of appellant's undisclosed recorded statements to contradict his trial testimony clearly affected his credibility before the jury, and he was given no opportunity to explain his statements. "On this record, we cannot say that [appellant] had a fair trial on the merits of the case." Id. Consequently, we hold that the admission of the tape and transcript was not harmless error, and we reverse.

### III.  HIV Testimony

Because this issue is likely to arise again on remand, we also address whether the trial court erred in allowing testimony that appellant was HIV-positive without giving him the opportunity to provide evidence to the contrary.

In its rebuttal case, the Commonwealth called Mark Wright, a prior acquaintance of appellant's and an inmate at the jail where appellant was housed. Wright testified that, while at the jail, appellant told him that on the day of the incident "[D.T.] told him three times to stop." When asked about his motive for revealing appellant's confession, Wright, over defense objection,

said he was testifying in part because appellant had told him he was infected with the HIV virus and "I felt like I just couldn't live with myself if that was true and he was going and having sex with people and he did, in fact, have the virus."

The trial court instructed the jury that "[w]hether or not the defendant has AIDS or tested positive for HIV is not the issue. This is being offered to show this gentleman's motivation for doing what he did." The trial court denied appellant's request to testify on surrebuttal that he was not HIV-positive or to introduce the newly acquired results of a test conducted by the Arlington County Sheriff's Department which established that appellant was HIV-negative at the time of his incarceration.

Appellant contends the trial court erred in allowing the jury to consider any testimony concerning his HIV status because its prejudicial effect outweighed its probative value. Additionally, appellant argues the cautionary instruction was insufficient to overcome the prejudice and the trial court compounded the error when it refused to allow him to rebut the prejudicial testimony.

"'The admissibility of evidence is within the broad discretion of the trial court,'" Blaylock v. Commonwealth, 26 Va. App. 579, 593, 496 S.E.2d 97, 104 (1998), and juries are presumed to follow limiting instructions. See Mills v. Commonwealth, 24 Va. App. 415, 420, 482 S.E.2d 860, 862 (1997). A judgment will not be reversed for the admission of evidence which the court

subsequently directs the jury to disregard "unless there is a manifest probability that the evidence . . . has been prejudicial to the adverse party." Coffey v. Commonwealth, 188 Va. 629, 636, 51 S.E.2d 215, 218 (1949). Conversely, as an exception to the rule, if the prejudicial effect of the impropriety cannot be removed by the instructions of the trial court, the defendant is entitled to a new trial. See id.; United States v. Ham, 998 F.2d 1247, 1251-52 (4th Cir. 1993) (evidence of child molestation and homosexuality was so inflammatory as to outweigh its value providing a motive for murder).

In the instant case, the prejudicial effect of Wright's statement that appellant was HIV-positive and knowingly put D.T. at risk outweighed its probative value in providing a motive for Wright's testimony about the rape. Furthermore, the cautionary instruction left the jury free to believe appellant had AIDS, and the trial court's subsequent denial of appellant's request to put on surrebuttal evidence that he was not HIV-positive compounded the error. We hold that the admission of the HIV testimony and the subsequent exclusion of contrary evidence were error, and the cautionary instruction was insufficient to cure the prejudice.

For the foregoing reasons, we reverse the convictions and remand for further proceedings if the Commonwealth be so advised.[3]

---

[3]Appellant also argues the trial court erred in its rulings and cautionary instructions concerning allegations of bribery of potential witnesses. Because the trial court excluded these statements and the error involved the viability of a curative

<u>Reversed and remanded.</u>

---

instruction, this issue is unlikely to arise on remand and we
need not address it.