COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Felton, Senior Judges Willis and Annunziata
Argued at Alexandria, Virginia


DONALD H. ROPER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 3139-06-4                      JUDGE JERE M. H. WILLIS, JR.
                                                         DECEMBER 27, 2007
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                              Kathleen H. MacKay, Judge

            Douglas R. Kay (Briglia & Hundley, P.C., on briefs), for appellant.

            Kathleen B. Martin, Senior Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        On appeal from his jury trial conviction of rape, two counts of sodomy, abduction, and

robbery, Donald H. Roper contends that the trial court erred:  (1) in admitting into evidence his

pretrial statement that the Commonwealth had failed to disclose, in violation of the discovery order

in the case; and (2) in admitting into evidence, over his hearsay objection, the report of the Sexual

Assault Nurse Examiner (SANE).  We agree.  We reverse Roper's convictions and remand to the

trial court.

                                            FACTS

        At about 4:00 a.m. on November 2, 1991, the victim drove to her home at Shenandoah

Crossing Apartments following a party at a neighboring apartment complex.  She parked and exited

her car in the lot near her apartment.  Two masked men approached and forced her into the back

seat of her car.  While one of the assailants drove the victim's car, the other held her head down so

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

she could not see where they were going. After traveling for five to ten minutes, both men raped and sodomized the victim in the vehicle. After the attack, one assailant drove the car to a high school located near the victim's apartment. The men took items from the victim's purse and fled. The victim denied having ever had consensual sexual intercourse with Roper.

The victim flagged down a passing motorist, who took her to her apartment. After contacting the police, she went to the hospital and was examined by SANE Barbara Harrell Patt. Ms. Patt completed a physical evidence recovery kit upon the victim. Testifying from a report that she produced contemporaneously with her examination of the victim, Ms. Patt stated she found no genital abnormalities, but that the absence of abnormal findings did not exclude the occurrence of sexual abuse or assault. The report also contained a section in which Ms. Patt recorded the victim's responses to a series of questions about the attack and about her conduct before and after the incident. Over objection that the report contained hearsay, the trial court admitted it into evidence as Exhibit 8.

In 2004, DNA analysis was performed on genetic material found on the victim's body during Ms. Patt's examination. The DNA profile was consistent with Roper's. Further DNA testing revealed that Roper could not be eliminated as a contributor of the genetic material.

In November 1991, Roper lived in Shenandoah Crossing Apartments. He testified that he attended a party at an apartment in Shenandoah Crossing in the early morning hours of November 2, 1991. He testified that at the party, he met a Caucasian woman he believed, at the time of his trial, was the victim. He testified that he and the victim left the party together and that after drinking beer and talking for a while, they had consensual sexual intercourse inside the maintenance shop of the apartment complex. He denied that he and another man abducted the victim in her car and had intercourse with her against her will.

On cross-examination, Roper testified that the party was at "Craig's" or "Greg's" apartment. He denied attending a party at the apartment of someone named "Roger" on November 2, 1991.

Called as a witness in rebuttal, Detective M.P. Pfeiffer testified that he interviewed Roper in May of 2005 regarding the victim's allegations. He testified that at that time, Roper said he had had a sexual encounter with a Caucasian woman at a party in the early 1990's. He said the party had taken place at the apartment of "Roger."

ANALYSIS

I.

Roper and the Commonwealth consented to the trial court's entry of a pretrial discovery order. Although generally Rule 3A:11 provides for limited pretrial discovery in felony cases, see Guba v. Commonwealth, 9 Va. App. 114, 118, 383 S.E.2d 764, 767 (1989), where a consent discovery order is in place, the terms of the order define the scope of discovery. See Abunaaj v. Commonwealth, 28 Va. App. 47, 53, 502 S.E.2d 135, 138 (1998).

In pertinent part, the discovery order entered by the trial court required the Commonwealth to allow Roper to inspect or copy

> (1) all written or recorded statements or confessions made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the Attorney for the Commonwealth; (2) all written reports of autopsies, ballistics tests, fingerprint and handwriting analyses, blood, urine and breath tests, other scientific reports, and written reports of a physical or mental examination of the accused or alleged victim made in connection with this case, or copies thereof, that are known by the Commonwealth's Attorney to be within the possession, custody or control of the Commonwealth; (3) all books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, *that are to be introduced at trial by the Commonwealth in her case in chief*; and any record of criminal convictions for felonies or offenses of moral turpitude of the Defendant and all persons to be called as witnesses for the

- 3 -

Commonwealth, who may have such criminal record, if in the custody or possession of the Commonwealth; the said record of the witnesses for the Commonwealth to be provided at the time of trial after the direct testimony of that witness . . . .

(Emphasis added.)

Roper argues the Commonwealth violated clause (1) of the discovery order by failing to reveal, prior to trial, the contents of his 2005 interview with Pfeiffer.[1] The trial court accepted the Commonwealth's contention that the discovery order limited the scope of clause (1) to require the Commonwealth to disclose only Roper's statements that it intended to introduce in its case in chief. This construction was error.

"'[W]hen construing a lower court's order, a reviewing court should give deference to the interpretation adopted by the lower court.'" Smoot v. Commonwealth, 37 Va. App. 495, 500, 559 S.E.2d 409, 411 (2002) (quoting Fredericksburg Construction v. J. W. Wyne Excavating, 260 Va. 137, 144, 530 S.E.2d 148, 152 (2000)). "Although trial courts have discretion to interpret their own orders, that discretion must be exercised reasonably and not arbitrarily or capriciously. Furthermore, an order must be interpreted within its four corners." Id. at 500, 559 S.E.2d at 411-12 (citation omitted).

The plain language of the discovery order required the Commonwealth to allow inspection or copying of three categories of items, each described in an enumerated clause separated from the other clauses by a semicolon, as well as a fourth unnumbered category. The description of the first category of items to be discovered, namely all statements or confessions Roper made to law enforcement officers, was not limited to items that the Commonwealth

---

[1] Roper also contends the Commonwealth was required to disclose the statement because it constituted exculpatory evidence. See Stotler v. Commonwealth, 2 Va. App. 481, 483, 346 S.E.2d 39, 40 (1986). However, the issues upon which this Court granted an appeal do not embrace this question. Accordingly, we will not consider this issue. See Cruz v. Commonwealth, 12 Va. App. 661, 664 n.1, 406 S.E.2d 406, 407 n.1 (1991).

intended to use in its case in chief. The language "that are to be introduced at trial by the Commonwealth in her case in chief" is contained only within the description of the third category of items, which included books, documents, and other objects. The limiting phrase thus applied only to the third category of items to be discovered, not to statements made discoverable by clause (1). See Abunaaj, 28 Va. App. at 53, 502 S.E.2d at 138 (citing federal authorities concluding parameters of discovery include statements used both in the government's case in chief and for impeachment). Therefore, the Commonwealth violated the discovery order by failing to disclose before trial Roper's statement to Pfeiffer.[2]

"Admission of relevant and material evidence at trial which was not previously disclosed as required by a discovery order, however, is not reversible error absent a showing of prejudice." Conway v. Commonwealth, 12 Va. App. 711, 716, 407 S.E.2d 310, 312 (1991) (*en banc*). "To show prejudice, the defendant must demonstrate how timely disclosure would have changed his trial strategy or affected the outcome of the trial." Smoot, 37 Va. App. at 502, 559 S.E.2d at 413. The Commonwealth argues that even if it violated the terms of the discovery order, Roper suffered no prejudice.

In Conway, the Commonwealth violated a discovery order by failing to produce the defendant's recorded statement before introducing it at his trial. Conway, 12 Va. App. at 715, 407 S.E.2d at 312. The statement contradicted the defendant's trial testimony and thus impeached his credibility, the bedrock of his defense. Reversing Conway's conviction, we held that the trial court erred in permitting Conway's undiscovered statement to be put into evidence to rebut his testimony. Id. at 717, 407 S.E.2d at 313.

---

[2] Interpreted in this manner, the discovery order was consistent with Rule 3A:11(b)(1)(i), which provides that a defendant is entitled to inspect or copy any relevant "written or recorded statements or confessions made by the accused" to any law enforcement officer, regardless of how the Commonwealth intends to use them at trial.

Our decision on this issue is controlled by Conway. Roper suffered prejudice from the Commonwealth's failure to disclose the statement it used to impeach him. Although the victim could not identify Roper as a perpetrator of the crimes against her, the Commonwealth's evidence proved he had sexual intercourse with her. His defense, that the intercourse was consensual, was dependent upon the jury's finding him to be credible. His statement to Pfeiffer contradicted his trial testimony concerning a significant detail, the location of the party where he allegedly met the victim. Moreover, had the Commonwealth disclosed his statement as the discovery order required, he would have had the opportunity to review the statement to refresh his memory and before deciding to take the witness stand. Accordingly, we hold that the trial court erred in permitting Roper's statement to be put into evidence to rebut his testimony, and his convictions must be reversed.

## II.

Roper further contends the trial court erred in admitting Ms. Patt's report as Exhibit 8 because it contained hearsay statements made by the victim.[3] Hearsay is defined as "an out-of-court statement offered to prove the truth of the matter asserted." Garcia v.

---

[3] Roper also argues Exhibit 8 was inadmissible because it contained the nurse's opinions and conclusions. At trial, he did not raise this objection to the admissibility of Exhibit 8. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this question on appeal.

> Although Rule 5A:18 allows exceptions for good cause or to meet the ends of justice, appellant does not argue that we should invoke these exceptions. See e.g., Redman v. Commonwealth, 25 Va. App. 215, 221, 487 S.E.2d 269, 272 (1997) ("In order to avail oneself of the exception, a *defendant must affirmatively show* that a miscarriage of justice has occurred, not that a miscarriage might have occurred." (emphasis added)). We will not consider, *sua sponte*, a "miscarriage of justice" argument under Rule 5A:18.

Edwards v. Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (*en banc*).

<u>Commonwealth</u>, 21 Va. App. 445, 450, 464 S.E.2d 563, 565 (1995) (*en banc*).  The statements of the victim contained in the report were introduced to corroborate her testimony and to prove how the offense occurred and what the victim did before and after the attack.  Therefore, the victim's statements in Exhibit 8 were hearsay.

In order for hearsay to be admissible, it must "come within one of the many established exceptions to the general prohibition against admitting hearsay."  <u>Hanson v. Commonwealth</u>, 14 Va. App. 173, 187, 416 S.E.2d 14, 22 (1992).  "'[T]he party seeking to rely upon an exception to the hearsay rule has the burden of establishing admissibility.'"  <u>Braxton v. Commonwealth</u>, 26 Va. App. 176, 183-84, 493 S.E.2d 688, 691 (1997) (quoting <u>Neal v. Commonwealth</u>, 15 Va. App. 416, 420-21, 425 S.E.2d 521, 524 (1992)).

The Commonwealth contends Exhibit 8, although itself a hearsay document, qualified for admission under the business record exception to the hearsay rule.  "Under the modern Shopbook Rule, . . . a recognized exception to the hearsay rule, verified regular entries may be admitted in evidence without requiring proof from the original observers or record keepers."  <u>Ford Motor Co. v. Phelps</u>, 239 Va. 272, 275, 389 S.E.2d 454, 457 (1990).  "'Admission of such evidence is conditioned . . . on proof that the document comes from the proper custodian and that it is a record kept in the ordinary course of business made contemporaneously with the event by persons having the duty to keep a true record.'"  <u>Sparks v. Commonwealth</u>, 24 Va. App. 279, 282, 482 S.E.2d 69, 70-71 (1997) (quoting <u>"Automatic" Sprinkler Corp. v. Coley & Peterson, Inc.</u>, 219 Va. 781, 793, 250 S.E.2d 765, 773 (1979)).

Even if we accept the Commonwealth's contention that Exhibit 8 was a business record meeting the definition of the Shopbook Rule, the report nonetheless contained the hearsay statements of the victim.  "[I]n order for a hearsay declaration which contains hearsay within it to be admissible, both the primary hearsay declaration and each hearsay declaration included within

it must conform to a recognized exception to the hearsay rule." <u>West v. Commonwealth</u>, 12 Va. App. 906, 910, 407 S.E.2d 22, 24 (1991).

The Commonwealth has advanced no exception to the hearsay rule encompassing the victim's responses to questions during the SANE examination. While a victim's complaint of rape is admissible under the "recent complaint" rule, "only the fact of the complaint and not the details given therein may be admitted . . . ." <u>Woodard v. Commonwealth</u>, 19 Va. App. 24, 27, 448 S.E.2d 328, 330 (1994). The scope of the victim's responses to Ms. Patt's questions extended beyond her report that she had been raped and sodomized. Accordingly, the admission of the victim's statements contained within Exhibit 8 was error. <u>See</u> <u>Cartera v. Commonwealth</u>, 219 Va. 516, 519, 248 S.E.2d 784, 786 (1978) (finding it improper for the trial court to permit a doctor who examined victims of a sexual assault "to recite the details of the offenses and the description of the assailant, as reported to him by the victims").

The Commonwealth contends that any error in the admission of Exhibit 8 was harmless. However, as we have already determined above that Roper's convictions must be reversed, we need not consider this question. <u>See</u> <u>Rozario v. Commonwealth</u>, 50 Va. App. 142, 146, 647 S.E.2d 502, 504 (2007) (*en banc*) (noting this Court cannot consider moot issues on appeal).

CONCLUSION

For the foregoing reasons, we reverse the judgment of the trial court and remand the case for further proceedings, if the Commonwealth be so advised.

<u>Reversed and remanded.</u>