COURT OF APPEALS OF VIRGINIA


Present: Judges Humphreys, Kelsey and Petty
Argued at Alexandria, Virginia


JUAN NATAEL ROMERO-DIAZ, S/K/A
  JUAN NATEL ROMERO-DIAZ

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0489-09-4                        JUDGE WILLIAM G. PETTY
                                                           MAY 4, 2010

COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                                 Robert J. Smith, Judge

              Michael J. Lindner (Law Office of Michael J. Lindner, on brief), for
              appellant.

              Richard B. Smith, Special Assistant Attorney General (William C.
              Mims, Attorney General, on brief), for appellee.


        On April 10, 2008, Juan Natael Romero-Diaz, the appellant, was convicted by a jury of

aggravated malicious wounding in violation of Code § 18.2-51.2.  On appeal, Romero-Diaz

challenges the trial court's admission into evidence of a recorded telephone conversation

between Romero-Diaz and his mother, Maria Diaz, because the Commonwealth failed to

produce it to defense counsel pursuant to a discovery order.  For the following reasons, we reject

Romero-Diaz's contention and affirm his conviction.

                                   I.  BACKGROUND

        "On appeal, we review the evidence in the light most favorable the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4

Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On August 13, 2007, the victim, Elio Martinez Theo, left his place of employment at Argia's Restaurant in Falls Church at approximately 10:30 p.m.  He reported to work that day at 8:30 a.m. and did not leave until late that evening.  The victim rode a bus to his stop in Culmore and then began walking toward his apartment on Argyle Drive.  As he was walking, the victim was attacked from behind by a group of several men that he neither knew nor recognized.  One of the assailants wrapped a thick chain around the victim's neck from behind, and then the other men began hitting and beating the victim with baseball bats.  After being hit repeatedly in the head, the victim lost consciousness.  The victim testified that he was able to see his attackers before losing consciousness and identified Romero-Diaz as one of them.  As a result of the attack, the victim suffers from significant, permanent injuries and memory loss.

A black aluminum bat was discovered in shrubs near where the victim was attacked.  A blue aluminum bat and a black and yellow wooden bat were also found nearby, as well as a bicycle lock chain and a black tee shirt.  The state laboratory determined that the DNA mixture found on the handle of the wooden bat established a very high probability that Romero-Diaz had handled the bat.  The victim's DNA was not found on the wooden bat, but the laboratory only tested its handle because the barrel contained no visible blood.  The DNA of Romero-Diaz's brother was found on the blue aluminum bat.  The black aluminum bat and black tee shirt contained blood from the victim and DNA from Freddie Ramos.

On August 15, 2007, Detective Flanagan interviewed Romero-Diaz's brother while Detective Bond interviewed Romero-Diaz through the assistance of an interpreter, Officer Neff.  Romero-Diaz's brother told Detective Flanagan that Romero-Diaz struck the victim twice with a bat.  However, Romero-Diaz relayed conflicting stories to the officers, first denying involvement in the attack at all, but later admitting that "[w]hat [his] brother said [was] true."  He later

changed his story again, and told Detective Bond that neither he nor his brother hit the victim at all.

During the trial, testimony revealed that earlier in the day of the attack, several gang members attacked Freddie Ramos, the boyfriend of Romero-Diaz's mother, outside the apartments where both Romero-Diaz and the victim lived. One of the gang members was swinging a chain in a threatening manner, and others were brandishing broken beer bottles. Later that same evening, Freddie Ramos, along with Romero-Diaz and Romero-Diaz's brother, chased down the victim and beat him in the head with baseball bats, apparently believing that the victim was a part of the gang who threatened Mr. Ramos earlier in the day.

Romero-Diaz testified that he did not touch the victim and claimed only to have been concerned for his safety and that of his family. He admitted carrying the wooden bat outside, but Romero-Diaz claimed that he did not hit the victim with it. Romero-Diaz maintained that he only accompanied Ramos outside because his mother and brother also followed Ramos, and he went along to protect them. Romero-Diaz testified that his brother tackled the victim and pulled him to the ground and then Ramos began to hit the victim multiple times in the head with a bat and several times in the chest with a chain. Romero-Diaz claimed to be in a state of shock during the beating and threw his baseball bat into a bush because he was unsure as to what to do next. He maintained that he did not assist Ramos in any way during the attack.

After Romero-Diaz testified in his own defense, the Commonwealth proffered that it intended to introduce a recorded inculpatory jail telephone conversation between Romero-Diaz and his mother, orally translated by an officer, as rebuttal evidence. The defense objected to the admission of the evidence based on the Commonwealth's failure to supply the recording

pursuant to a discovery order.[1]  The court overruled the objection, and announced that it "may have a solution to" the defense objection.  It adjourned until the next morning in order to give the defendant an opportunity to review the statement and present additional argument.  When the court reconvened, and, over the defense's objection based on the discovery order violation as well as other grounds, the court allowed the Commonwealth to introduce the tape and the oral translation.  The pertinent part of the recorded conversation revealed Romero-Diaz's mother apparently verifying with the appellant that he hit the victim in the legs.  The defense recalled Romero-Diaz to the witness stand where he claimed that he and his mother were very confused and did not know what to do.  He further stated that he did not give his mother a correct answer and that she was not aware of what he told the police.

The jury convicted Romero-Diaz as charged and sentenced him to twenty years in prison.  The court entered its final judgment order on February 26, 2009.  This appeal followed.

II.  ANALYSIS

We note at the outset that we are not concerned with a prosecutor's failure to disclose exculpatory evidence.  Rather, the issue raised by Romero-Diaz is whether the trial court erred in admitting an incriminating recorded telephone conversation between Romero-Diaz and his mother that the Commonwealth failed to produce to the defense counsel pursuant to a discovery order.  In reviewing the admissibility of evidence, we review the facts in the light most favorable to the Commonwealth.  Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980).  A ruling with respect to the admissibility of evidence will not be disturbed on appeal in the absence of an abuse of discretion.  Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d

---

[1] The relevant portion of the discovery order quotes the language of Rule 3A:11 verbatim.  See Abunaaj v. Commonwealth, 28 Va. App. 47, 53, 502 S.E.2d 135, 138 (1998) (A consent discovery order, rather than Rule 3A:11, will govern discovery in a criminal case when such an order is in place.).

838, 842 (1998). A conviction will not be reversed for failure to produce inculpatory evidence in violation of a discovery order unless specific prejudice has been alleged and demonstrated by the defendant. Davis v. Commonwealth, 230 Va. 201, 205, 335 S.E.2d 375, 378 (1985). Thus, "[a]bsent a showing that the late disclosure prejudiced the defense, it is not an abuse of discretion for the trial court to refuse to exclude the challenged evidence." Knight v. Commonwealth, 18 Va. App. 207, 212, 443 S.E.2d 165, 168 (1994).

The pertinent section of Rule 3A:11 states the following:

> (b) *Discovery by the Accused.* (1) Upon written motion of an accused a court shall order the Commonwealth's attorney to permit the accused to inspect and copy or photograph any relevant (i) written or recorded statements or confessions made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the attorney for the Commonwealth . . . .

Romero-Diaz argues that, although there is no constitutional right to discovery in criminal cases, the Commonwealth should have supplied him with all his recorded statements which were known to the Commonwealth, pursuant to the discovery order entered by the trial court.[2] On the other hand, the Attorney General argues that the Commonwealth was not obligated to disclose Romero-Diaz's recorded statements in this case because they were made to his mother, rather than a law enforcement officer.

---

[2] The discovery order followed the language of Rule 3A:11(b) and required that:

> The Commonwealth of Virginia permit the Defendant to inspect, copy and/or photograph (1) all written or recorded statements or confessions made by the accused, or copies thereof, or the substance of any oral statements or confessions made by the accused to any law enforcement officer, the existence of which is known to the Attorney for the Commonwealth . . . .

Assuming without deciding that the Commonwealth violated the discovery order,[3] to constitute reversible error the Commonwealth's failure to disclose the recorded conversation must prejudice the defendant's case. Smoot v. Commonwealth, 37 Va. App. 495, 502, 559 S.E.2d 409, 412 (2002); see Davis, 230 Va. at 204, 335 S.E.2d at 377-78; Conway v. Commonwealth, 12 Va. App. 711, 716, 407 S.E.2d 310, 312-13 (1991). It is the defendant's burden to show prejudice based on the discovery violation. "To show prejudice, the defendant must demonstrate how timely disclosure would have changed his trial strategy or affected the outcome of the trial." Smoot, 37 Va. App. at 502, 559 S.E.2d at 412-13; see also Davis, 230 Va. at 204, 335 S.E.2d at 377 (holding that to demonstrate prejudice from the nondisclosure of inculpatory evidence, defense counsel must "suggest to the trial court how their earlier disclosure would have benefited [defendant's] defense or altered the course of the trial"); Knight v, 18 Va. App. at 215, 443 S.E.2d at 170 (holding that to demonstrate prejudice from the late disclosure of inculpatory evidence, defendant must show "how his trial tactics might have been different if [the evidence] had been disclosed before the trial"); Conway, 12 Va. App. at 716, 407 S.E.2d at 313 (observing that the admission of nondisclosed evidence is reversible upon a showing that the nondisclosure prejudiced defendant's "case" or "defense"). "When a discovery

---

[3] Because we decide that Romero-Diaz was not prejudiced by the purported violation of the discovery order, we need not address whether the Commonwealth actually violated the order. We note, however, that the Attorney General's position has been rejected on several occasions. Smoot v. Commonwealth, 37 Va. App. 495, 500, 559 S.E.2d 409, 412 (2002) (citing Abunaaj, 28 Va. App. at 52-53 n.1, 502 S.E.2d at 138 n.1); Conway v. Commonwealth, 12 Va. App. 711, 715, 407 S.E.2d 310, 312 (1991) ("Rule 3A:11 requires the Commonwealth to allow an accused to inspect and copy or photograph any written or recorded statements, the existence of which is known to the attorney to the Commonwealth"); Nautly v. Commonwealth, 2 Va. App. 523, 528, 346 S.E.2d 540, 543 (1986) (Rule 3A:11 places "no limitation" on the defendant's right to his own statements). See also Ronald J. Bacigal, Virginia Practice: Criminal Procedure § 14:3 (2009-10). We also note that the Commonwealth's Attorney's argument at trial—that the statement was not required to be disclosed because it was introduced in rebuttal rather than during the Commonwealth's case-in-chief—was not argued by the Attorney General on appeal, and, thus, is not before us.

violation does not prejudice the substantial rights of a defendant, a trial court does not err in admitting undisclosed evidence." Davis, 230 Va. at 204, 335 S.E.2d at 377-78 (citations omitted).

Although Romero-Diaz claims on appeal that he was unfairly prejudiced by the admission of the evidence that was not disclosed to him before trial, he was unable to articulate to the trial judge how an "earlier disclosure would have benefited [his] defense or altered the course of the trial." Id. at 204, 335 S.E.2d at 377. In his brief, Romero-Diaz only argues that "[he] was substantially prejudiced because the Commonwealth's witnesses were able to listen to the recording but [he] was not." This claim does not demonstrate "how timely disclosure would have changed [the appellant's] trial strategy or affected the outcome of [his] trial." Conway, 12 Va. App. at 716, 407 S.E.2d at 312-13.

Here, the defense requested neither a postponement, nor a mistrial. Significantly, even after the court recessed until the next day, the defense did not request to listen to the tape or interview the witness who was prepared to interpret the substance of the conversation. Indeed, when the trial resumed the next day, Romero-Diaz's only argument in support of his request to suppress the statement was that it had not been provided to him prior to trial, that it had not been properly authenticated, and that the statement was involuntary under the Fifth and Fourteenth Amendments to the United States Constitution. Having failed to determine the contents of the recording during the recess, Romero-Diaz could only speculate on what he might have done differently had the prosecutor disclosed the content of the recording in a timely manner.[4] At no

---

[4] The only prejudice Romero-Diaz alleged at trial was that he "would have been able to perhaps get someone to review the tapes, and/or had the opportunity to do so and maybe even get a witness." While this may suggest the possibility of prejudice, it stands in stark contrast to the prejudice appellate counsel alleged at oral argument, that is, he "might not have even put the defendant on the stand" to testify had he known of the tape's existence. The latter, if presented to the trial court, may have constituted the type of prejudice necessary to support the exclusion of the evidence or a mistrial. Conway, 12 Va. App. at 716, 407 S.E.2d at 313. However, trial

point did Romero-Diaz allege that the delayed disclosure prevented him from presenting any specific evidence relevant to the recording, nor did he offer any "explanation of how his trial tactics might have been different if this statement had been disclosed before trial." Knight, 18 Va. App. at 215, 443 S.E.2d at 170 (holding that because the appellant did not request a continuance or offer any explanation of how his trial tactics would have been different, "[t]he late-disclosed evidence . . . did not necessitate such a drastic remedy" as exclusion).

Additionally, where, as here, a defendant fails to specifically tell the trial court why he is prejudiced by the Commonwealth's failure to disclose his prior statement, the trial court cannot fashion an appropriate corrective remedy. Frye v. Commonwealth, 231 Va. 370, 384, 345 S.E.2d 267, 277 (1986) (holding that the trial court was under no duty to volunteer a remedy that was not requested by the defendant). Code § 19.2-265.4(B) sets out the remedies a trial court may employ to address a failure to provide court-ordered discovery. The trial court may

> order the Commonwealth to permit the discovery or inspection, grant a continuance, or prohibit the Commonwealth from introducing evidence not disclosed, or the court may enter such other order as it deems just under the circumstances.

Thus, the statute authorizes the trial court to tailor the remedy for a discovery order violation to meet both the nature and degree of prejudice incurred by the defendant and the flagrancy of the violation.

While Romero-Diaz asked the trial court to impose the most extreme sanction short of dismissal of the charges—the suppression of otherwise relevant and admissible rebuttal evidence—he failed to present to the court a specific prejudice that would support the remedy of exclusion of the evidence. Knight, 18 Va. App. at 215, 443 S.E.2d at 170. He further failed to

---

counsel did not allege any such a prejudice during trial. Further, mere speculation about the possibility of obtaining a witness who might be able to testify does not support the "drastic remedy" of exclusion of the evidence. See Knight, 18 Va. App. at 215, 443 S.E.2d at 170.

present to the court any reason why other remedies, such as a continuance or mistrial, would not sufficiently address any prejudice he might have incurred. Because he failed to present any such argument to the trial court, we cannot say the trial court abused its discretion in ordering the remedy it did.

### III. CONCLUSION

Rule 3A:11 and Code § 19.2-265.4 give the trial court substantial latitude in fashioning a remedy for a violation of a discovery order. It may "order the Commonwealth to permit the discovery or inspection, grant a continuance, or prohibit the Commonwealth from introducing evidence not disclosed, or . . . enter such other order as it deems just under the circumstances." Code 19.2-265.4(B). We cannot say that the trial court's actions in this case constituted an abuse of this discretion. Thus, we affirm the conviction.

<u>Affirmed.</u>