COURT OF APPEALS OF VIRGINIA

Present:   Judges Petty, Beales and AtLee
Argued at Richmond, Virginia


NATAJH MUNFORD, S/K/A
 NATAJH DEVON MUNFORD
                                                    MEMORANDUM OPINION* BY
v.       Record No. 1114-16-2                        JUDGE WILLIAM G. PETTY
                                                        MARCH 27, 2018
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
W. Allan Sharrett, Judge

Jason S. Eisner for appellant.[1]

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Natajh Munford was found guilty by a jury of felony eluding police in violation of Code

§ 46.2-817(B)[2] and misdemeanor driving with a suspended license in violation of Code

§ 46.2-301.  On appeal, Munford argues that "[t]he trial court erred in disallowing [him] to *voir*

*dire* the jury about the impact of his appearance in jail attire . . . [as this was a] proper question[]

that w[as] necessary to determine whether a jury free from bias or opinion could be empaneled."

We agree.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Except as noted, Munford declined representation and proceeded *pro se* during the
portions of his jury trial that are relevant to this appeal.  Counsel was appointed for Munford's
appeal to this Court.

[2] The sentencing order erroneously indicates that Munford was convicted of violating
Code § 46.2-81.

BACKGROUND

Because the parties are fully conversant with the record in this case and this memorandum opinion carries no precedential value, we recite only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal. We view the pre-trial events in the light most favorable to the Commonwealth, the prevailing party below, granting to it the benefit of any reasonable inferences; we review issues of law *de novo*. Hall v. Commonwealth, 55 Va. App. 451, 453, 686 S.E.2d 554, 555 (2009).

The Commonwealth filed a written pre-trial motion requesting that Munford wear leg shackles during the jury trial in which he was proceeding *pro se*. Munford arrived on the day of trial wearing jail attire and shackles. Before the potential jurors were brought into the room, the court noted that Munford was wearing jail attire and asked if he had an objection to that. Munford replied, "Somewhat." When asked by the court if Munford had made a written request for alternate clothing or had made arrangements for other attire, Munford answered that he did not know such arrangement was possible. The Commonwealth asked the court "to allow the leg shackles and the jail attire and for a cautionary instruction to the jury" as requested in its motion. The trial court heard testimony from the court's own security personnel regarding Munford's behavior at the courthouse during prior hearings and admitted evidence regarding Munford's behavior at the jail. When the Commonwealth asked Captain Stubbs, the courthouse security deputy, if she had "concerns about the defendant appearing in court without being in jail attire and shackles," the captain replied that she did. The trial court's final order states that the "Commonwealth made a motion and presented evidence as to defendant wearing jail attire and shackles during the jury trial. The [c]ourt granted the motion."

The trial court began the jury selection process by introducing Munford to the jurors. The trial court noted that he had "chosen to represent himself." The trial court also introduced

Munford's standby counsel to the jurors. During this introduction, the trial court did not give the

jury the cautionary instruction requested by the Commonwealth. The trial court asked the jury

preliminary questions.[3] The Commonwealth declined to ask any additional questions; the trial

court then gave Munford the opportunity to ask questions of the jurors. Munford's fourth

question,[4] the subject of this appeal, was "Are the jurors biased by pre-seeing me in my previous

attire of jail clothes?" Although the Commonwealth made no objection to the question, the trial

court said, "I'm not going to allow that question because—I'm not going to allow that question."

Munford argues that the trial court's refusal to permit this question was reversible error.

ANALYSIS

"[T]he manner of conducting *voir dire* rests 'within the [trial] court's discretion.'"

Juniper v. Commonwealth, 271 Va. 362, 390, 626 S.E.2d 383, 402 (2006) (second alteration in

original) (quoting Fisher v. Commonwealth, 236 Va. 403, 410-11, 374 S.E.2d 46, 50 (1988)).

---

[3] The general questions included whether any juror had "any interest in this trial or in the outcome of this case," had "acquired any information about the alleged offense or the accused or this matter from any source whatsoever," had "expressed or formed any opinion about whether Mr. Munford is guilty or not guilty," or was "aware of any bias or prejudice either for or against the Commonwealth or for or against the accused, Mr. Munford?"

[4] Munford first attempted to question the jurors regarding their occupations. The trial court would not permit the question. The trial court allowed his questions regarding whether the jurors had acquired any information about the case and whether "any of the jurors were biased by race or racism of any kind." After the question at issue here, Munford next attempted to ask whether the jury knew that he had been incarcerated, and whether the jury knew "the guidelines of this charge"; those questions were not permitted by the trial court. After conferring with standby counsel, Munford was allowed to ask if "any of the jurors have any relation to any of the officers, or do they have any law enforcement people that are in their family?" He then attempted to ask if the jury knew he was "being tried without seeing any evidence" and whether "any of the jurors been attacked or beaten by any law officers?" Those questions were not allowed. When Munford attempted to ask if any juror had "been in a situation where they had firearms pulled on them," the trial court terminated Munford's questioning of the jurors. Munford only assigns error to the trial court's failure to allow the question regarding jail attire and the question regarding whether jurors had been attacked or beaten by law officers. Because we resolve the appeal on the question regarding jail attire, we need not address Munford's argument that the question regarding whether jurors had been attacked or beaten by law officers should have been allowed.

The purpose of *voir dire* is to protect an accused's constitutional right to trial by an impartial jury. A defendant's right to question potential jurors is codified in Code § 8.01-358. It provides, in relevant part, that

> the court and counsel for either party shall have the right to examine under oath any person who is called as a juror therein and shall have the right to ask such person or juror directly any relevant question to ascertain whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein . . . .

See also Rule 3A:14 ("After the prospective jurors are sworn on the *voir dire,* the . . . counsel as of right[] may examine on oath any prospective juror and ask any questions relevant to the qualifications as an impartial juror."); Morgan v. Illinois, 504 U.S. 719, 729 (1992) ("[P]art of the guarantee of a defendant's right to an impartial jury is an adequate *voir dire* to identify unqualified jurors.").

Parties do not have "an unlimited constitutional or statutory right to propound any question to a jury panel. Rather, the questions propounded during *voir dire* must be relevant to the factors prescribed in Code § 8.01-358." Juniper, 271 Va. at 395-96, 626 S.E.2d at 405 (quoting Commonwealth v. Hill, 264 Va. 315, 319, 568 S.E.2d 673, 675 (2002)). Simply put, "if an answer to the question would necessarily disclose, or clearly lead to the disclosure of the statutory factors of relationship, interest, opinion, or prejudice, it must be permitted. Questions which go beyond this standard are entirely within the trial court's discretion." Id. at 396, 626 S.E.2d at 405 (quoting LeVasseur v. Commonwealth, 225 Va. 564, 581, 304 S.E.2d 644, 653 (1983)). Furthermore, while "[t]he court must afford a party a full and fair opportunity to ascertain whether prospective jurors 'stand indifferent in the cause,' . . . the trial judge retains the discretion to determine when the parties have had sufficient opportunity to do so." Id. (quoting LeVasseur, 225 Va. at 581, 304 S.E.2d at 653).

The Supreme Court has recognized that requiring a defendant to appear before a jury in jail attire is potentially prejudicial. When the accused stands "before a jury in clearly identifiable jail or prison clothes[, that fact] may undermine the fairness of the fact-finding process and, thus, violate the accused's fundamental right to a presumption of innocence while furthering no essential state interest." Wilkins v. Commonwealth, 292 Va. 2, 7, 786 S.E.2d 156, 159 (2016) (quoting Jackson v. Washington, 270 Va. 269, 276, 619 S.E.2d 92, 95 (2005)); Jackson, 270 Va. at 280, 619 S.E.2d at 97 ("Reason and common human experience dictate, at a minimum, that the accused's appearance in jail clothes is such a badge of guilt that it would render an accused's assertion of innocence less than fully credible to the jury." (quoting Estelle v. Williams, 425 U.S. 501, 505 (1976))). Any juror who harbors the belief that a defendant in jail attire is more likely to be guilty is subject to being struck for cause. Holloman v. Commonwealth, 65 Va. App. 147, 165, 775 S.E.2d 434, 443 (2015) ("A potential juror should be struck for cause if he or she . . . 'is sensible of any bias or prejudice.'" (quoting Mayfield v. Commonwealth, 59 Va. App. 839, 845, 722 S.E.2d 689, 693 (2012))). Thus, jail attire is clearly a circumstance encompassed by the rights of inquiry set out in Code § 8.01-358.[5]

---

[5] This is not to suggest that under certain circumstances a trial court cannot require shackles or jail attire. The Supreme Court has recognized that

> [w]hile a defendant may not, under ordinary conditions, be forced to wear visible physical restraints [and, in this case, jail attire] because of the possibility of prejudice, such [measures] may be constitutionally justified in the presence of a valid state interest, such as that of ensuring the security of the courtroom and those present in it, or even that of maintaining the "dignity, order, and decorum" of court proceedings.

Porter v. Commonwealth, 276 Va. 203, 263, 661 S.E.2d 415, 446 (2008) (internal citations omitted).

Here, the Commonwealth asked the trial court to require Munford to wear his jail attire, and his shackles, in front of the jury during the trial.[6] The trial court heard testimony that security personnel had security concerns if Munford was not tried in jail attire and shackles. We assume without deciding that the trial court was well within its discretion when it determined Munford "ought to remain shackled for public safety, person[al] safety and court staff safety" based on Munford's documented past behavior. The question before us is not whether the trial court acted within its discretion in requiring Munford to remain in his jail attire; the question before us is whether, having decided to proceed with Munford thus attired, the trial court could preclude Munford from questioning the jurors about the possible prejudice caused by the attire.

Code § 8.01-358 gives the defendant the right to ask a "juror directly any relevant question to ascertain whether he . . . is sensible of any bias or prejudice." Although the trial court had asked the jurors preliminary questions regarding prejudice and bias, Munford's attire was a specific circumstance that was potentially prejudicial. The trial court focused the jury's attention on Munford when it introduced him as not only the defendant but also as representing himself. However, despite the Commonwealth's request to do so, the court failed to give a cautionary instruction addressing Munford's attire. The manner of conducting *voir dire* to ensure an impartial jury rests within the discretion of the trial court. Juniper, 271 Va. at 390, 626 S.E.2d at 402. Had the trial court given the cautionary instruction, or included a question regarding the jail attire in its preliminary questions, the potential prejudice as a result of the attire would have been sufficiently addressed. Having granted the Commonwealth's request to require Munford to wear the jail attire and shackles, and having failed to address the topic itself, the trial

---

[6] The final order in this case states that Munford did not object to the jail attire. Because we dispose of the appeal on the issue of the disallowed *voir dire* question, and because we are confident that upon retrial the trial court will address the issue consistent with the Supreme Court's holding in Porter, we do not address Munford's argument that he was compelled to wear jail attire in violation of his constitutional rights.

court was required to give Munford "a full and fair opportunity to ascertain whether prospective jurors" were prejudiced by the clothing. See id.; see also Morgan, 504 U.S. at 729-30 ("*Voir dire* plays a critical function in assuring the criminal defendant that his right to an impartial jury will be honored. Without an adequate *voir dire* the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled."). Munford's proposed question was clearly calculated to "disclose, or clearly lead to the disclosure of the statutory factor[] of . . . prejudice," and therefore fell squarely under the category of questions permitted by the statute. See Juniper, 271 Va. at 396, 626 S.E.2d at 405.

The Commonwealth agrees that the jail attire was prejudicial. Nevertheless, it argues that "even though there was presumed prejudice from the jail attire, Munford's prior conduct justified his being tried in such clothing." This argument conflates the question of whether the court abused its discretion by requiring the jail attire as a security measure, which we do not address here, with whether the court abused its discretion by disallowing a question that Munford was statutorily permitted to ask pursuant to Code § 8.01-358.

The Commonwealth additionally suggests that in asking the question about jail attire Munford "intended to convey information to jurors which could not otherwise be presented," such as the fact that he was incarcerated.[7] As evidence of this, the Commonwealth cites

---

[7] The Commonwealth also suggests that because Munford did not object to the shackles, which were more prejudicial, the presence of jail attire was a trial tactic to gain sympathy from the jury. As support for its argument, it notes that in its motion to require Munford to wear the shackles and jail attire it asserted, "In court on January 11, 2013, the defendant stated that he wanted to keep his shackles and jail attire on throughout his jury trial, stating repeatedly that he 'loved the shackles' and wanted the jury to see him in them." The record does not include a transcript of the January 11, 2013 hearing; we therefore cannot determine the merit of the Commonwealth's assertion. On the day of trial, Munford was asked by the trial court if he had objection to wearing jail attire. He replied, "Somewhat." The record indicates that Munford was unaware that he could request to wear civilian clothing during the trial and therefore had not

questions Munford attempted to ask *after* the question at issue. A trial court certainly has discretion to disallow questions propounded for an improper purpose and to determine when a party has "had sufficient opportunity" to probe potential bias. Id. Here, however, Munford had asked only three questions prior to the one at issue, two of which had directly related to disclosure of other types of potential prejudice. At the time Munford sought to ask the jurors if they were biased against him on the basis of his attire, the subsequently disallowed questions had not yet been asked and therefore could not have provided a basis for the trial court disallowing the question at issue.

The Commonwealth further argues the trial court's refusal to allow Munford to ask the jurors about bias on the basis of his attire was harmless because "the evidence against the defendant was overwhelming." Under the standard for non-constitutional harmless error,[8] "such error is harmless if we can be sure that it did not 'influence the jury' or had only a 'slight effect.'" Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015) (quoting Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001)). "[W]hether a defendant's sentencing was affected by an error at trial is a factor in our harmless error analysis." Zektaw v. Commonwealth, 278 Va. 127, 140, 677 S.E.2d 49, 56 (2009) (addressing constitutional harmless error). Here, Munford was convicted of Code § 46.2-817(B), a Class 6 felony punishable by

---

made arrangements to acquire different attire. Thus, the record before us is not sufficient to conclude Munford chose jail attire as a trial tactic. Moreover, even if Munford's argument, inexplicably, challenges his jail attire but not the shackles, that strategy on appeal is his own decision. The fact that Munford could have objected to, or asked the jurors a question about, a more prejudicial security measure, the shackles, does not negate his right to ask about the jail clothes.

[8] Because Munford alleges an error in his statutory right to question the jurors pursuant to Code § 8.01-358 and does not allege his constitutional rights were violated, we apply the non-constitutional harmless error standard here. See Grant v. Commonwealth, 54 Va. App. 714, 729, 682 S.E.2d 84, 91 (2009) (noting the Supreme Court has "applied the lesser standard of non-constitutional harmless error [where] the error there was statutory").

imprisonment from one to five years. The jury sentenced Munford to three years. The jury additionally sentenced Munford to six months for his misdemeanor conviction of Code § 46.2-301. Even if, as the Commonwealth contends, the evidence for guilt was overwhelming, we cannot say with fair assurance that Munford's appearance in jail clothes did not sway the jurors in determining the punishment. See Billips v. Commonwealth, 274 Va. 805, 810, 652 S.E.2d 99, 102 (2007) ("[I]f one cannot say, with fair assurance . . . that the judgment was not substantially swayed by the error, it is impossible to conclude that the substantial rights were not affected . . . . If so, or if one is left in grave doubt, the conviction cannot stand." (alterations in original)). Munford's *voir dire* question was calculated to disclose specifically whether the jurors were influenced or affected by Munford's attire. Without the benefit of the answer we cannot know whether his attire played a role in the verdict of the jury, either as to guilt or the sentence imposed. Accordingly, we cannot say with any confidence that it was harmless.

CONCLUSION

Because Munford's jail attire was potentially prejudicial and the answer to his question regarding the clothing could have disclosed such prejudice, the trial court erred in not permitting the question. Munford's opportunity to question the jurors about the potentially prejudicial jail attire was especially important here; the trial court had required Munford to appear in jail attire and, despite the Commonwealth's request to do so, had failed to address the issue before the jury. Accordingly, we reverse and remand for a new trial if the Commonwealth is so inclined.[9]

Reversed and remanded.

---

[9] Munford additionally argues that the trial court "erred in disallowing [him] to view discoverable evidence against him before proceeding with a jury trial *pro se* because it prevented him from properly preparing for his trial." Munford has now viewed the evidence. "[T]his issue is unlikely to arise on remand and we need not address it." Yazid Abunaaj v. Commonwealth, 28 Va. App. 47, 58, 502 S.E.2d 135, 140 (1998).